[Civ. No. 12292.   First Dist., Div. Two.   Mar. 3, 1943.]

KATHERYNE  L.  HULBURD,  Respondent,  v.  MAY
WORTHINGTON, Appellant.

Hoge, Pelton & Gunther and A. Dal Thomson for Appellant.

Alvin Gerlack and Hildebrand, Bills & McLeod for Respondent.

SPENCE, J.—Plaintiff sought damages for personal injuries sustained when she was struck by the automobile of defendant. The jury returned its verdict in favor of plaintiff in the sum of $10,000 and judgment on said verdict was entered. Defendant appeals from said judgment.

█ The sole contention of defendant on this appeal is that the judgment should be reversed because of the prejudicial misconduct of counsel for plaintiff. Plaintiff makes no serious attempt to deny the charge of misconduct but earnestly contends that the misconduct was not prejudicial. Under these circumstances we will refer only briefly to the nature of the alleged misconduct.

On the voir dire examination of the jurors, counsel for plaintiff, without any apparent provocation or justification, volunteered the statement before the prospective jurors that "Mr. Hoge is very clever and very skilled in trying to mislead a jury . . ." Again on the voir dire examination, counsel for plaintiff made certain statements in an apparent attempt to rebuke the members of a jury, which had been selected from the same panel and which had served in another case in which case counsel for defendant had represented another defendant, for bringing in a verdict in favor of the plaintiff in that case for only nominal damages. In the discussion between court and counsel regarding this matter, the following occurred, "The Court. Do you know anything about that case? Mr. Hildebrand. Not a thing. . . . The Court. Mr. Hildebrand, you shouldn't criticize the jury when you don't know anything about the case. Mr. Hildebrand. I know it." During the examination of the witnesses, counsel for plaintiff repeatedly attempted, despite the trial court's action in sustaining objections, to convey the impression to the jury through objectionable questions that a police officer had issued a citation to the defendant for violating the law at the time of the accident. This subject was pursued, on the cross-examination of defendant, to the point where counsel for plaintiff asked the defendant: "Q. And you paid the fine too?" Timely objections were made and sustained and the trial court immediately admonished the jury. However, defendant's motion to declare a mistrial was denied.

It requires no citation of authority to support the conclusion that counsel for plaintiff was guilty of inexcusable misconduct in making the above mentioned statements and in asking the improper questions after objections thereto had been repeatedly sustained. We will refer only to the case of *Burbank* v. *McIntyre*, 135 Cal.App. 482 [27 P.2d 400], in connection with the improper questions put to the witnesses for the purpose of implying that defendant had suffered an arrest and conviction as the result of the accident. It was

held in that case that the conduct of counsel constituted prejudicial misconduct requiring a reversal of the judgment. But each case must stand upon its own particular facts in determining whether the judgment should be set aside or a new trial should be granted because of misconduct of counsel. Such action should not be taken merely for the sake of punishing offending counsel but only for the purpose of preventing a miscarriage of justice. It becomes our duty therefore to examine the entire record including the evidence to determine whether such action should be taken here. (Const., art. VI, sec. 4½.) In this connection, it should be stated that defendant made a motion for a new trial, based upon the alleged prejudicial misconduct, and that the trial court denied said motion. In *LaFargue* v. *United Railroads*, 183 Cal. 720 [192 P. 538], the court said at page 724, "The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong." (See also *Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621 [286 P. 456]; *Girard* v. *Irvine*, 97 Cal.App. 377 [275 P. 840].) Therefore, the real question before us here is whether, under the circumstances appearing from the record, it may be said that the conclusion of the trial court in determining that the misconduct was not prejudicial and in denying the motion for a new trial was plainly wrong.

Defendant concedes that there was ample evidence to sustain the implied findings of the jury relating to negligence on the part of the defendant, the absence of contributory negligence on the part of plaintiff and the extent of the damage. Plaintiff, a retired school teacher, 68 years of age, sustained a fracture of both the tibia and fibula of the left leg and a fracture of both the ulna and radius of the left arm resulting in a non-union of the radius with no reasonable hope of a permanent union. She was still in the hospital at the time of trial, about seven months after the accident, and had incurred special damages for hospital and medical care in the sum of approximately $2,500. It is the claim of defendant, however, that there was a "sharp conflict" in the evidence and that the evidence was "so evenly balanced that there is no reason to believe that the jury would have de-

cided this case in favor of plaintiff had the trial taken its normal course and been unaffected by the highly unfair tactics indulged in by the attorney for the plaintiff.''

Our review of the record leads us to the conclusion that the great preponderance of the evidence was in favor of the plaintiff. The facts shown by this evidence will be briefly set forth. The accident occurred in the city of Oakland at about 4:50 p. m. on the afternoon of October 20, 1941, at the intersection of Broadway and MacArthur Boulevard, formerly Moss Avenue, and hereinafter called the boulevard. The boulevard runs in a general easterly and westerly direction. Broadway runs in a general northerly and southerly direction. Both streets are very wide and are very heavily travelled. There are double streetcar tracks on Broadway and there is a parked area in the center of the boulevard dividing the two sides thereof. The distance from the parked area in the center of the boulevard to the curb on either side is 39 feet. The curb lines on the four corners of the intersection are rounded to form large arcs. On each of the four corners is an electric traffic signal of the customary type, showing alternately red and green lights to control the movement of vehicles and pedestrians. There are plainly marked pedestrian lanes across the intersection which are in prolongation of portions of the wide sidewalk areas. It was raining quite heavily at the time that the accident occurred.

Plaintiff had visited the Andrew Williams Store on the southeast corner of the intersection and had made some purchases. She left the store and, after awaiting the change in signal, she was walking in a northerly direction across the boulevard in the marked pedestrian lane on the easterly side of Broadway when defendant, who had driven southerly along Broadway and was turning easterly on the boulevard at a speed of between 12 and 20 miles per hour, struck plaintiff, causing her to be thrown or carried in an easterly direction beyond the pedestrian lane and to be slid along the wet pavement a few feet beyond the point where the automobile was stopped. We believe that the only conflict in the evidence on any important point was in the evidence regarding the position of plaintiff at the time she was struck. The only testimony which had any tendency whatever to show that plaintiff was not in the pedestrian lane, as claimed by defendant, was the testimony of defendant herself. The tes-

timony of plaintiff and the disinterested witnesses who testified on the subject showed definitely that plaintiff was in the pedestrian lane. As we read the record, we believe that the alleged conflict was not a very substantial one and that it cannot be said that the evidence was evenly balanced as claimed by defendant.

Police officers arrived at the scene shortly after the accident had happened. They took certain measurements which were made from the prolongation of the easterly curb line of Broadway. They testified that the distance from the prolongation of said east curb line to the front bumper of defendant's car where it had been stopped was approximately 26 feet. In the statement made by defendant to the officers, which was signed by defendant at the hospital, defendant stated, ''I had made my turn and I was about 25 feet east of the east curb line when I—when all at once a pedestrian appeared in front of my right front fender. I was going slow and stopped at once at the point shown the officer.'' The point ''shown the officer'' where the automobile stopped was accurately located by the officers on a diagram when the officers testified as witnesses at the trial. That point was but 7 feet east of the easterly boundary of the pedestrian lane. Said pedestrian lane was 10 feet wide, the westerly boundary thereof being located 9 feet east of the easterly curb line of Broadway. The easterly boundary thereof was therefore located 19 feet east of said curb line. In her testimony on the trial, defendant claimed that the accident occurred when the front of defendant's car was about 25 feet east of the easterly line of the *pedestrian lane* rather than of the easterly *curb line*. It was the theory of defendant's counsel that plaintiff could not therefore have been walking in the pedestrian lane. Counsel for defendant still adheres to this theory and even in his reply brief he insists that defendant ''immediately informed a police officer that the accident happened at a point 25 feet east of the east line of the pedestrian walk,'' giving a transcript reference to support his assertion. Turning to the portion of the transcript to which reference is made, it appears therefrom that defendant then stated that the accident occurred ''at a point 25 feet east of the east curb line.'' But all of the testimony in the record, other than that of

defendant, shows that plaintiff was struck while walking in the pedestrian lane and that defendant's automobile stopped with its front bumper only 7 feet beyond the easterly line of said cross walk. The statement of defendant made immediately after the accident substantially supported the testimony of the other witnesses and said statement discredited defendant's testimony given on the trial. It is for this reason that we are convinced that the evidence preponderated in favor of plaintiff and that no different verdict would have been reached if there had been no misconduct whatever. We therefore are of the view that, under the circumstances presented by the record in this case, the misconduct of plaintiff's counsel was not prejudicial. In any event, we cannot say upon the state of the record before us that the trial court's conclusion that said misconduct was not prejudicial was plainly wrong.

The judgment is affirmed.

Nourse, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 29, 1943. Shenk, J., Edmonds, J., and Schauer, J., voted for a hearing.