[Civ. No. 3270. Fourth Dist. Sept. 21, 1944.]

MANDY B. KARR, Appellant, v. CHARLIE J. POWELL, Respondent.

Charles J. O'Connor for Appellant.

Martin J. Coughlin for Respondent.

GRIFFIN, Acting P. J.—Plaintiff and defendant formerly were husband and wife. After her divorce and remarriage, plaintiff filed an action against her former husband to quiet title to a dwelling which was acquired by them as joint tenants on July 9, 1931, and homesteaded on June 22, 1933, while they were husband and wife. After their divorce the home was occupied by plaintiff and the children. The defendant filed an answer denying the allegations of the complaint and also filed a cross-complaint asking that the property be partitioned.

The affidavit attached to the declaration of homestead states that plaintiff is the owner and joint tenant with defendant of the property described and declared to be of the value of $2,000. Plaintiff's answer to the cross-complaint alleges that on June 29, 1933, they executed a property settlement agreement, but expressly excluded the homestead from it; that on August 17, 1933, the parties separated; that on August 27, 1934, a final decree of divorce was entered between them (no disposition was made of the property by the divorce decree); that on September 15, 1935, the defendant deeded a one-half interest in the property to his brother, Delbert J. Powell; and that the half interest transferred to Delbert immediately was retransferred to the defendant, but the defendant did not record the later deed until March, 1943, after plaintiff had started a quiet title action against the administrator of the estate of the deceased brother, Delbert J. Powell.

It is defendant's contention that the deeds between himself and brother were executed for the purpose of terminating the joint tenancy; that the brother was in no sense his agent and had no rights in the property except momentarily; that plaintiff retained occupation of the property under a verbal

agreement that she should pay the taxes and upkeep of the property until the children became of age. It is plaintiff's contention that the brother Delbert came to her after the property was deeded to him and claimed ownership; that she repudiated his ownership and told him that she was the sole owner; that he had better go to his brother and get his money back; that the home was hers; that she continued this attitude for more than five years; that she continued in open, notorious and exclusive occupancy of the property, paid all taxes, insured the property in her own name, and at all times claimed sole ownership; that she made improvements of approximately one-third of the valuation of the property; that she had no knowledge that anyone other than Delbert claimed any ownership; and that as to him she never withdrew her repudiation.

Apparently plaintiff's claim to the property is based on adverse possession. She contends that the undisputed evidence shows that she repudiated the claim of ownership made by Delbert J. Powell, to whom defendant deeded all of his interest in the property.

The property settlement agreement, signed by the parties in June, 1933, before they separated, provided that Charlie J. Powell surrendered all rights to a probate or any other homestead out of any property that belonged to Mandy B. Powell except the homestead declared by her ''on the property on which the parties are now residing.'' A modification of the property settlement agreement was made on August 23, 1933. Neither agreement specifically mentioned the property here involved.

Plaintiff testified that defendant never at any time between September 20, 1935, and the date of the recording of the deed in 1943, made any claim that he owned a part of the property here involved; that he never discussed it with her, never contributed to the payment of any part of the taxes on the property, never informed her that he had deeded a one-half interest to his brother; that at the time they separated they did not have any understanding that she could continue to live in the house; that she told him if he left home the house was to be hers and he could not come back to it; that since the separation she and the two children continued to live in the home; that she asked her daughter to go to defendant and

ask him if he would sign a quitclaim deed of the title to the property because the title was clouded but that defendant refused to do so.

Defendant testified that prior to the separation and at the time the property settlement agreement was entered into, plaintiff told him that she wanted a divorce and that he said "You can have one"; that he told her she could live in the property here involved and pay the upkeep and he would give her $100 per month for a year and after that if his business could afford it she would get $150 per month; that she was to live there and pay the upkeep of the property until the children became of age and that there would be a settlement as to that property at that time; that plaintiff and the children continued to live there with his consent; that he executed a deed to his brother for the purpose of terminating the joint tenancy and to "break the homestead"; that Delbert never informed him that plaintiff claimed the entire property; that plaintiff occupied the property under the agreement above mentioned and not adversely; that on April 27, 1937, the plaintiff called him on the telephone and asked him to deed the home over to her so she could borrow some money on it; that he said "Nothing doing" and hung up the phone.

The minor daughter of plaintiff and defendant testified that about a year before the trial of this action, on several occasions her mother requested her to speak to defendant and see if he would not "clear the title on the place" so she could have money to fix up the house; that she spoke to her father in reference to this and that he never gave her any definite answer. After this testimony was produced plaintiff said she did not "recall any telephone conversation" with defendant; that she did request her daughter to see him and ask him if he would clear the title, but that was after the death of Delbert. He died on March 1, 1940.

Upon this evidence the trial court found that plaintiff and defendant were the owners of an undivided one-half interest in the real property; that the allegations of defendant's cross-complaint were true; that plaintiff and defendant separated prior to August 27, 1934, and that plaintiff and the two minor children occupied the real property described "pursuant to an agreement with the defendant permitting such occu-

pancy''; that plaintiff expended $637 in making improvements upon the property; and that it is so situated that partition thereof cannot be made without prejudice to plaintiff and defendant; that an interlocutory decree of partition be entered appointing a referee to conduct a sale and deduct therefrom $637, awarding the balance of the proceeds from the sale to the plaintiff and defendant, share and share alike. Judgment was entered accordingly.

Plaintiff cites many cases to the effect that a cotenant in possession can gain title by adverse possession in either or both of two ways: (A) By actual notice. Claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter; or (B) By constructive notice. Exercising acts of unequivocal character and of such a nature as will give notice to the other cotenant that an adverse possession is intended. Defendant does not quarrel with this rule. ■ The real question here involved is whether or not there is sufficient evidence to support the court's finding that the plaintiff did not gain title to defendant's interest in the property by adverse possession. There is substantial evidence to support the finding and it cannot be said that the evidence on this question is undisputed. Plaintiff and defendant were, during their married life, the record owners of the property in joint tenancy. It was agreed that plaintiff and the children should remain in the home until the children were of age and that at that time some disposition of their respective interests therein would be made. The property settlement agreement made no disposition of that particular property but provided that the status of the homestead was to remain unchanged. Plaintiff apparently recognized and acknowledged the defendant as the owner of some interest in the property and requested him to transfer it to her. There is but slight evidence that the defendant had notice that plaintiff held and claimed the property adversely to him.

In *Tabler* v. *Peverill*, 4 Cal.App. 671, 676 [88 P. 994], quoting from cited cases, the court said:

'' 'It is clear that an adverse holding and claim of title do not, of themselves, constitute an ouster. The tenant out of possession has a right to assume that possession of his cotenant is *his* possession, until informed to the contrary, either by express notice or by acts and declarations which may possibly

be equivalent to notice under certain circumstances. But until he has notice, either actual or constructive, in some form, that the possession of his cotenant has become hostile, it will be deemed in law to have been amicable, notwithstanding the tenant in possession may in fact have been holding adversely.' . . . See, also, subject discussed by Mr. Wood in his work on Limitations, sec. 266, where it is said that 'the evidence must be stronger than would be required to establish a title by possession in a stranger.' '' (See, also, *Pyramid Land & Stock Co.* v. *Scott,* 51 Cal.App. 634, 646 [197 P. 398]; *Clarke* v. *Clarke,* 133 Cal. 667, 669 [66 P. 10]; *Johns* v. *Scobie,* 12 Cal. 2d 618 [86 P.2d 820, 121 A.L.R. 1404].)

█ Finally, plaintiff claims that the trial judge committed error in refusing to allow her to answer the proposed question: "By Mr. O'Connor: Tell the court what the intention was as to the matter of claiming or fighting for ownership of this property during all this time." Plaintiff cites authorities to the effect that when the intention of a person is a material fact to be proved under the issue, it may be proved by the direct testimony of such person whether he is a party to the suit or not. (10 Cal.Jur. p. 832, § 117.)

It is difficult to hold that the question as propounded properly raises the question argued. It is a general rule that the secret intention of a cotenant, to hold the title in fee adversely to other cotenants, is immaterial unless communicated to the cotenants not in possession. (*Faubel* v. *McFarland,* 144 Cal. 717 [78 P. 261]; *Tabler* v. *Peverill, supra; Miller* v. *Myers,* 46 Cal. 535, 539.) Surely no prejudicial error resulted from the court's ruling.

Judgment affirmed.

Marks, J., concurred.

A petition for a rehearing was denied October 19, 1944, and appellant's petition for a hearing by the Supreme Court was denied November 13, 1944.