[S. F. No. 17391. In Bank. May 29, 1947.]

J. HALLAM COPE, Appellant, v. WARREN W. DAVISON, Respondent.

John Paul Jones for Appellant.

Hoge, Pelton & Gunther and Hauerken, Ames & St. Clair for Respondent.

William J. Palmer, as Amici Curiae, on behalf of Respondent.

EDMONDS, J.—J. Hallam Cope sued to recover damages for personal injuries sustained in an automobile accident. In the complaint, Cope alleged that at the time he sustained the injuries, he was a guest of Warren W. Davison, who was operating the automobile in which they were traveling. The principal attack upon the judgment in favor of the driver concerns the definition of "wilful misconduct" stated in the instructions to the jury.

The evidence is conflicting. Davison and his wife, traveling by automobile, started on a hunting trip. Cope accompanied them as their guest. Davison was driving the car. Toward midnight, as a light rain was falling, the party approached a sharp turn in the highway. A sign at that point warned motorists to slow down to 25 miles per hour. Davison was familiar with the curve, having been over the road many times. He saw the sign and knew that the curve

was ahead. He also knew that in rainy weather the road was slippery, either because the dust had become wet or on account of oil on the highway. According to his testimony, under such circumstances, the turn was dangerous if not driven around very slowly.

Cope's account of the accident was that as they approached this point, Davison drove at a speed of 45 miles per hour. About 60 to 80 feet from the curve the car skidded slightly and Davison, deciding that he could not make the turn, drove the car straight ahead through the fence and into a ditch. At no time before the accident did he slacken the speed of the car, according to Cope. Davison, on the other hand, testified that he slowed down to about 20 miles an hour as they approached the turn. He was traveling at "the normal safe speed to make a turn" when the car started to skid, according to his testimony, and he "thought the safest thing to do, as long as . . . [the car was] . . . sliding this way, would be to go straight ahead."

Following a verdict for Davison and entry of judgment, Cope made a motion for a new trial. The grounds of this motion included irregularities in the proceedings of the court and errors in law occurring at the trial. The motion was denied.

The appellant contends that the instructions were erroneous because the jurors were not informed in regard to the kinds of knowledge as to the probability of injury which may constitute wilful misconduct within the meaning of section 403 of the Vehicle Code. Only rarely, says the appellant, does a defendant admit that he operated his automobile with actual knowledge of probable injury to the occupants of the vehicle. For that reason, the argument continues, ordinarily, a guest must prove his cause of action by showing facts from which knowledge of probable injury may be implied. In the present case, it is pointed out, the instructions did not define wilful misconduct as a wrongful act done with the knowledge, express, or to be implied from the circumstances, that injury might result.

As a further ground for the reversal of the judgment, Cope assigns as erroneous the ruling whereby Davison was allowed to testify, over objections, that he did not intend to have an accident, did not intend to injure Cope, and did not intend to injure anyone, including his wife, who was in the car. A third point relied upon is that counsel for Davison

was guilty of prejudicial misconduct which prevented a fair trial. The determination of the court upon each of these matters, Cope asserts, amounts to prejudicial error entitling him to a new trial.

The respondent insists that the instructions defining wilful misconduct are complete and accurate. There is no magic in the words "express or implied," he says, and the equivalent of these words was given in other instructions. The jurors might infer, they were told, that the driver had such knowledge, and presumably, they considered the instructions as a whole. Furthermore, it is argued, the courts have not invariably used the expression "express or implied" in regard to wilful misconduct and the equivalent of the so-called "external standard" was stated to the jury.

Upon the second issue, Davison takes the position that whenever evidence of the motive or intent with which an act is done is relevant, direct testimony of the party whose conduct is under attack is admissible, although not conclusive. Accordingly, he says, it is proper to interrogate one charged with wilful misconduct relative to his mental attitude, and knowledge of the probable consequence of his act, if this inquiry relates to the condition of mind prior to or simultaneously with the accident.

Davison's answer to the criticism in regard to the alleged misconduct of counsel is that no complaint was made during the trial concerning either statements or argument, and no instructions thereon were requested. Under these circumstances, it is said, the record as to the asserted misconduct is not subject to review, and the trial court's ruling in denying a motion for a new trial on this point will not be disturbed unless it is plainly wrong. Upon the merits of the question, it is asserted that counsel was not guilty of misconduct.

 The jury was instructed as follows: " 'Wilful misconduct' is defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge on the part of the driver that injury to his passenger will be a probable result of his conduct or under circumstances disclosing a wanton and reckless disregard of the possible injurious results of his conduct.

"The terms 'wilful misconduct' have a meaning in the law, additional to that which they have in common usage.

If we were to use the words in their ordinary sense, they would mean simply the indulging in wrongful conduct by conscious choice. Such conduct might consist of doing something which ought not to be done, or in failing to do something that ought to be done. But in order to be a basis for liability to a guest under our law the misconduct must be something more than intentional and wrongful; it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.

"Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury to the guest probably will result, [or] with a wanton and reckless disregard of the possible results.

"Although wilful misconduct is a form of negligence, it is something more than negligence; more even than what might be called gross negligence. A guest may not recover against his host driver for negligence; however, it might be classified, unless that negligence amounted to wilful misconduct, then that means intentional, wrongful conduct, done either with knowledge that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results.

"When there is a question whether a vehicle driver conducted himself with knowledge that serious injury to a guest probably would result from the conduct, proof of such knowledge does not have to be by direct evidence. The jury has a right to infer that the driver had such knowledge, if such an inference may reasonably be drawn from facts in evidence, and if the judgment of the jury so directs."

These instructions, it is said, built up in the minds of the jurors the requirement of actual knowledge and a specific intent in order to constitute wilful misconduct. The deficiency in the definition of the standard of care required of Davison was not cured by the statement that the jurors might infer knowledge on the part of the driver as it presented merely a rule of evidence for their guidance. The second instruction was confusing, and the third one erroneous, says the appellant, because it leaves out the important word "or" and thus fails to distinguish between the two types of wilful misconduct. The appellant contends that his proposed instructions, refused by the trial court, would have cured these errors.

Wilful misconduct has been defined in various ways. In *People* v. *Young,* 20 Cal.2d 832, 836 [129 P.2d 353] (quoting from *Howard* v. *Howard,* 132 Cal.App. 124, 129 [22 P.2d 279]), it was said: " 'Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' " By two earlier decisions, *Porter* v. *Hofman,* 12 Cal.2d 445, 448 [85 P.2d 447], and *Parsons* v. *Fuller,* 8 Cal.2d 463, 468 [66 P.2d 430], this court adopted the language of *Helme* v. *Great Western Milling Co.,* 43 Cal.App. 416, 421 [185 P. 510], saying: "The term 'serious and wilful misconduct' is described by the supreme court of Massachusetts as being something 'much more than mere negligence, or even gross or culpable negligence' and as involving 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences.' . . . To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury." In the Porter case, *supra,* the court stated: "To this must be added the element included in the definition approved in *Meek* v. *Fowler,* 3 Cal.2d 420, 425 [45 P.2d 194], and cases following it, of actual knowledge or its equivalent that an injury to a guest will be a probable result." The Meek case followed *Turner* v. *Standard Oil Co.,* 134 Cal.App. 622, 626 [25 P.2d 988], and defined wilful misconduct ". . . as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result."

A full discussion of these definitions is found in *Van Fleet* v. *Heyler,* 51 Cal.App.2d 719, 727 [125 P.2d 586], where the court said: "But on consideration of the cases on the subject, and reconciling them as far as possible, we find them to divide 'wilful misconduct' into two distinct lines of action, either of which will render a driver liable to his guest for its results, as follows: first, 'the intentional doing

of something with a knowledge that. serious injury is a
*probable* (as distinguished from a possible) result'; and,
second, 'the intentional doing of an act with a wanton and
reckless disregard of its *possible* result.' Both of these state-
ments are quoted from *Howard* v. *Howard* (1933), 132 Cal.
App. 124, 129 [22 P.2d 279], and have been approved in
the many later cases reviewed in *People* v. *Nowell,* 45 Cal.
App.2d (Supp.), pp. 815 and 816 [114 P.2d 81]."

Measured by these definitions, the instructions in the pres-
ent case were not erroneous. The most recent opinion of this
court (*People* v. *Young, supra*) defining wilful misconduct
entirely omits the words "express or implied" when referring
to knowledge of the defendant. Furthermore, the last quoted
instruction, which was offered by Cope, bridged the gap left
by the omission of these words. As stated in this instruction,
the jury might infer knowledge by the driver that serious
injury to a guest probably would result from his conduct,
if such an inference could reasonably be drawn from the
facts in evidence. The courts have treated "inferred" as
synonymous with "implied" (see *Davis* v. *Hearst,* 160 Cal.
143, 162 [116 P. 530] ; *State* v. *Millain,* 3 Nev. 371, 405),
and it is presumed that the jury considered the instructions
as a whole. (*Douglas* v. *Southern Pacific Co.,* 203 Cal. 390,
396 [264 P. 237] ; *Stroud* v. *Hansen,* 48 Cal.App.2d 556,
562 [120 P.2d 102].)

In the Van Fleet case, *supra,* it was said that, for the
purposes of determining whether the circumstances in a given
situation are sufficient to disclose implied knowledge of the
probability of injury from an act or omission, an external
standard is applied. Such a probability, it was concluded,
using the language of *Stacey* v. *Hayes,* 31 Cal.App.2d 422,
426 [88 P.2d 165], " 'must have been an apparent conse-
quence to a man of ordinary prudence and intelligence.' "
Considering the present record, the last quoted instruction
advised the jury, in substance, that they might draw their
own inferences, and could charge the driver with knowledge
"if the judgment of the jury so directs." This instruction
presented for determination as an issue of fact the question
as to whether Davison had implied knowledge of the prob-
able consequences of his conduct. It allowed the jurors to
draw from the evidence the inference that a man of ordinary
prudence and intelligence would have realized the probable
consequences of his conduct even though Davison himself
did not do so.

Read as a whole, the instructions to the jury correctly and sufficiently disclosed the intention necessary to prove wilful misconduct, and they were neither misleading nor confusing. ■ The failure to include the word "or" between the two types of wilful misconduct in one of the instructions was probably a typographical error. In any event, it was cured by the other instructions which clearly distinguished between the kinds of conduct which fall within the statutory ban.

The objections to the questions asked of Davison concerning his intention to cause injury were made upon the grounds that they were immaterial, constituted an invasion of the province of the jury, and were leading and suggestive. Cope insists that "an intent to have an accident or an intent to injure" anyone is not an element of wilful misconduct, and, therefore, the questions were immaterial. The prejudicial effect of this testimony was increased, the appellant argues, by the definition of wilful misconduct given to the jury.

■ The state of mind of a person, like the state or condition of the body, is a fact to be proved like any other fact when it is relevant to an issue in the case, and the person himself may testify directly thereto. (See 29 Am.Jur. 312.) ■ Whenever the motive or intent with which an act was done is relevant, direct testimony is admissible, although not conclusive. (*Harned* v. *Watson*, 17 Cal.2d 396, 403 [110 P.2d 431]; *Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6, 9 [171 P. 1066]; *Horton* v. *Winbigler*, 175 Cal. 149, 156 [165 P. 423]; *Karr* v. *Powell*, 66 Cal.App.2d 28, 33 [151 P.2d 576]; see Code Civ. Proc., § 1870; 1 Jones Commentaries on Evidence, §§ 170 et seq.; 10 Cal.Jur., Evidence, § 117; 20 Am.Jur., Evidence, § 338; 31 C.J.S., Evidence, § 178.) ■ Also, when knowledge of a fact has important bearing upon the issues, evidence is admissible which relates to the question of the existence or nonexistence of such knowledge and a wide range of proof is allowed. (*Katz* v. *Bedford*, 77 Cal. 319, 323 [19 P. 523, 1 L.R.A. 826]; *Central H. Imp. Co.* v. *Memorial Parks*, 40 Cal.App.2d 591, 609 [105 P.2d 596]; see Code Civ. Proc., § 1870; 10 Cal.Jur., Evidence, § 118; 20 Am.Jur., Evidence, § 336; 31 C.J.S., Evidence, § 178.)

It was said in *Porter* v. *Hofman, supra,* page 447, and *Parsons* v. *Fuller, supra,* page 468 (quoting from *Norton* v. *Puter,* 138 Cal.App. 253 [32 P.2d 172]) that wilful miscon-

duct "necessarily involves deliberate, intentional, or *wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, *that danger is likely to result therefrom. . . ."* And in *Meek* v. *Fowler, supra,* page 425, the following language appears: " 'While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence and that this misconduct must be wilful. While the word "wilful" implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. . . .' "

In *Van Fleet* v. *Hyler, supra,* page 729, when considering the extent of the knowledge of a driver necessary to charge him with wilful misconduct, the court said: "On the question of intent, defendant contends, quoting from *Walker* v. *Bacon,* (1933) 132 Cal.App. 625, 627 [23 P.2d 520], that 'Wilful misconduct refers to intentional acts, that is, acts designed to bring about the result involved in the suit,' and argues further that because his own family was in the car he could not have had such an intent and was therefore not guilty of wilful misconduct. While the presence of a driver's family or friends in the car with him is a fact to be considered in determining the state of mind, it is by no means conclusive on the subject. In many of the cases where drivers have been held guilty of wilful misconduct, family or friends, or both, have been among their guests. The statement quoted by defendant from *Walker* v. *Bacon, supra,* appears in the opinion of only

one judge, not concurred in by the other two, who joined in the decision for other reasons, and is not a correct statement of the law. On the contrary, it is implicit in the authoritative definitions of 'wilful misconduct,' and is also now settled by positive holdings that an intent to injure anyone is not a necessary ingredient of wilful misconduct. . . .'' The same rule was stated in *Hastings* v. *Serleto*, 61 Cal.App.2d 672, 690 [143 P.2d 956], where the court held that ''Undoubtedly it is proper to interrogate one accused of wilful misconduct relative to his mental attitude and knowledge of the probable consequences of his act, but such inquiry must be confined to his state of mind prior to or contemporaneously with the accident and not subsequent thereto.''

■ Applying these principles to the present case, the evidence objected to was admissible. Although ''an intent to injure anyone is not a necessary ingredient of wilful misconduct,'' ''wilful misconduct involves a more positive intent actually to harm another'' than gross negligence and could be established by proving such an intent. The questions were relevant to the issue of intent and knowledge, and were admissible to prove Davison's state of mind contemporaneously with the accident.

■ Because the closing arguments of counsel were not reported, the appellant relies upon the affidavits filed in connection with the motion for a new trial to support his claim of misconduct. He declares that prejudice resulted when, over objection, he was referred to as being the ''so-called'' friend of Davison. Other remarks of similar import are also relied upon as justifying relief.

It has been said that ''As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect. It is only the most extreme case where an instruction to the jury, if given, would not remove the effect of improper remarks.'' (*Aydlott* v. *Key System Transit Co.*, 104 Cal.App. 621, 628 [286 P. 456].) The record in the present case shows no assignment of misconduct and the

trial court was not asked to instruct the jury to disregard the challenged remarks. The point may not, therefore, be considered upon appeal. ██ Furthermore, these matters were presented to the trial court in support of the motion for a new trial. The motion was denied. A trial judge is in a better position than an appellate court to determine whether a verdict resulted wholly, or in part, from the asserted misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong. (*Lafargue* v. *United Railroads*, 183 Cal. 720, 724 [192 P. 538]; *Hulburd* v. *Worthington*, 57 Cal.App.2d 477, 479 [134 P.2d 832]; *Aydlott* v. *Key System Transit Co.*, *supra*, p. 628.) The showing made by the appellant falls far short of meeting that requirement.

The judgment is affirmed.

Shenk, J., and Spence, J., concurred.

Schauer, J.—I concur in the judgment.

CARTER, J.—I dissent.

The evidence would support the conclusion that defendant on a wet road, with the knowledge that it might be slippery and cause his car to skid, intentionally and deliberately drove his car toward the curve at 45 miles per hour, knowing that the curve was there and knowing that even on a dry pavement it was a dangerous curve unless approached very slowly.

Under the definition of wilful misconduct which has become standardized in this state this evidence was ample to support a finding of wilful misconduct.

Appellant proposed an instruction that: "If you believe under the evidence in this case that the defendant Warren W. Davison intentionally did something or omitted to do something, in the operation of his automobile on the night in question, with knowledge express or implied, that injury to plaintiff was a probable consequence of his intentional act or failure to act, then I instruct you that defendant was guilty of wilful misconduct.

"I instruct you that in determining whether the said intentional act or omissions of said defendant, if such you find them to be, are sufficient to disclose implied knowledge of such probability of injury to plaintiff guest, an external standard is applied, and applying the 'external standard'

the defendant Warren W. Davison is charged with knowledge of the probable consequences of his conduct, such consequence being apparent to any person of ordinary prudence of which you ladies and gentlemen of the jury are the exclusive judge.''

The court was also asked to give several instructions qualifying the necessary knowledge of probable injury to the guest by the participial adjectives ''express or implied'' and the words ''express or implied'' were stricken by the court. Another proposed instruction contained this language: ''It is enough if at the time and place of the happening of this accident that he knew, or should have known, of circumstances which would bring home to the realization of the ordinary reasonable man the highly dangerous character of his conduct. . . .'' This instruction the court also refused to give. As a result, by the instructions given to them, the jury was informed that in order to find defendant guilty of wilful misconduct they must find that he had *actual* knowledge that the probable consequence of his intentional conduct would be an injury to plaintiff. This is contrary to the law. (*Hastings* v. *Serleto,* 61 Cal.App.2d 672, 681, 687-688 [143 P.2d 956]; *Van Fleet* v. *Heyler,* 51 Cal.App.2d 719, 727-730 [125 P.2d 586], and review of authority therein; *Rawlins* v. *Lory,* 44 Cal.App.2d 20, 24-25 [111 P.2d 973].)

The jury's verdict was reached by a vote of 9 to 3. It is obvious that the jurors who voted for the defendant may have concluded that defendant intentionally approached this dangerous curve at 45 miles per hour but without the conscious realization or actual knowledge of the probability of injury to his guest. It is equally obvious under the facts that if properly instructed the same jurors might have found that such probability of injury would have been apparent to any person of ordinary prudence. The failure to instruct them that in determining whether defendant had implied knowledge of probable injury to his guest they should apply the external standard of what would be apparent to a person of ordinary prudence must be held to be prejudicial error.

This error was not cured by the giving of the following instruction: ''When there is a question whether a vehicle driver conducted himself with knowledge that serious injury to a guest probably would result from the conduct, proof of such knowledge does not have to be by direct evidence. The jury has a right to infer that the driver had such knowledge, if such an inference may reasonably be drawn from facts in evidence, and if the judgment of the jury so directs.''

To instruct the jury that defendant must have actual knowledge is an instruction on a substantive fact which they are told must be proved to establish plaintiff's right to recover. To further instruct them that this actual knowledge may be proved by circumstantial evidence does not change the fact that under the instructions they must still find actual knowledge, and is not in any sense the same thing as telling them that they need not find that the defendant had actual knowledge if they do find that a person of ordinary prudence would have had such knowledge.

In considering the prejudicial effect of the instructions given by the court to the jury it would be well to review the definition of wilful misconduct which has been consistently followed by this court and the District Courts of Appeal. It is stated in *Turner* v. *Standard Oil Co.* (1933), 134 Cal.App. 622, 626 [25 P.2d 988], as follows: " 'Wilful misconduct' within the meaning of this statute, may be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something that should be done under circumstances disclosing knowledge, *express or implied*, that an injury to a guest will be a probable result." [Emphasis added.]

Some of the many cases approving and adopting this definition are: *Meek* v. *Fowler*, 3 Cal.2d 420, 425 [45 P.2d 194]; *Hastings* v. *Serleto*, 61 Cal.App.2d 672, 679 [143 P.2d 956]; *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719, 727 [125 P.2d 586]; *Haas* v. *Jones*, 29 Cal.App.2d 650, 652 [85 P.2d 579]; *Wright* v. *Sellers*, 25 Cal.App.2d 603, 608 [78 P.2d 209]; *Fisher* v. *Zimmerman*, 23 Cal.App.2d 696, 699 [73 P.2d 1243]; *Gimenez* v. *Rissen*, 12 Cal.App.2d 152, 157 [55 P.2d 292, 56 P.2d 299]. From this definition it appears that two fundamental elements constitute "wilful misconduct," they are: (1) A wrongful act knowingly done; and (2) knowledge, either actual or to be implied from the circumstances, that an injury to a guest will be a probable result.

The actual distinction between the two types of acts constituting "wilful misconduct" have been recognized and pointed out by the courts in *Van Fleet* v. *Heyler, supra,* hearing denied in Supreme Court, and *Hastings* v. *Serleto, supra.*

Since defendants in wilful misconduct cases seldom admit actual knowledge of probable injury, the plaintiff usually proves the second element by showing "implied knowledge," within the rule stated in *Turner* v. *Standard Oil Co., supra.*

It is of vital importance that the instructions on the subject recognize this most usual, and practically speaking, the only available method of proving the second element. The great importance of giving the plaintiff the full opportunity to prove his case by showing implied knowledge of probable injury is well stated in *Wright* v. *Sellers, supra,* at page 613; as follows: ". . . this intentional act, or intentional failure to act, must be under circumstances disclosing a knowledge on the part of the driver that an injury to his guest would be a probable result, or under circumstances from which such knowledge on the part of the driver might be inferred. The consciousness must relate to the intentional act done, or to the intentional failure to act. The intent may be implied from the surrounding circumstances. An actual intent to injure is not a necessary element of which positive evidentiary proof must be produced. Such proof would rarely be possible. Few drivers would confess to the intent to injure a passenger. It is sufficient if the act, or the failure to act, be done or omitted under such circumstances that the driver should have known that injury to his guest was a probable result, for again, positive evidentiary proof of such knowledge would be an impossibility in most cases. (*Jones* v. *Hathway,* 22 Cal.App.2d 316 [70 P.2d 681].)'"

The court gave as its instruction No. 4 the following: "'Wilful misconduct' is defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge on the part of the driver that injury to his passenger will be a probable result of his conduct or under circumstances disclosing a wanton and reckless disregard of the possible injurious results of his conduct."

This instruction contained no recognition of the fact that an intentional wrongful act coupled with implied knowledge of probable injury also constitutes wilful misconduct. It lays down an absolute requirement of actual knowledge in order to constitute wilful misconduct. It virtually requires an actual intent to injure. Under the "implied knowledge" part of the definition of wilful misconduct, as stated in *Turner* v. *Standard Oil Co., Wright* v. *Sellers, supra,* and distinctly pointed out in *Van Fleet* v. *Heyler,* and *Hastings* v. *Serleto, supra,* it is clear that a defendant may be held liable if he commits a wrongful act under circumstances indicating that

he should have known that his conduct would probably result in the injuries to his guests. The above quoted instruction entirely omits this possibility. Nor is the distinction pointed out in any of the other of the court's instructions.

This instruction is based upon the erroneous assumption that if a defendant believes he can drive his car with safety, such belief will exonerate him regardless of the highly dangerous quality of his acts and whether or not a reasonable person in his position should have known of the probability of resulting injury.

It is safe to say that the automobile driver involved in every "wilful misconduct" case to be found in the books believed that he could drive his car in the particular manner charged without injuring anyone. The reckless driver never intends, although he sometimes is apprehensive of, the disastrous results which occur. The defendant certainly should not be exonerated from the consequences of his misconduct as he was by this instruction because he might have thought that he could drive as he did with safety and did not as he stated intend the resulting injuries. If it were necessary to prove that a defendant driver believed that he could not drive as he did with safety and that he actually intended the accident, or was totally indifferent to possible results, or that he had actual knowledge that injury to his guest was probable, a plaintiff would have to prove in substance that the defendant driver was guilty of intent to commit murder or mayhem depending upon how lucky the guest was, and perhaps suicide as well, before a case of wilful misconduct could be made out. Under the cases already cited, this is not the law.

Further, after having allowed the defendant to testify that he didn't intend to have an accident, and that he didn't intend to injure plaintiff, his own wife, or anyone else, in the light of this instruction the jury could well conclude that inasmuch as plaintiff didn't prove that defendant actually knew and actually intended that by his conduct he would have an accident and that injury was a probable result, the defendant having denied actual knowledge and a specific intent, therefore the plaintiff didn't sustain his burden of proof and defendant could not be guilty of wilful misconduct under such circumstances. Under the cases cited, this is not the law.

There is not a single reported decision in which an actual intent to injure has been found to exist. The requirement

of an actual intent to injure and actual knowledge of probability of injury was laid down as law in *Walker* v. *Bacon*, 132 Cal.App. 625 [23 P.2d 520], which was specifically overruled in *Van Fleet* v. *Heyler*, *supra*, which held that an intent to injure is not a necessary element of wilful misconduct.

Indeed, it is the absence of an intent to injure which distinguishes wilful misconduct from one of several serious crimes. This distinction is very clearly brought out in the Restatement of the Law of Torts, as follows: "Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or from facts which he knows should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his acts results." (§ 500f, p. 1296.)

The language of the court in *Wright* v. *Sellers* (1938), 25 Cal.App.2d 603, at page 613 [78 P.2d 209], is too clear for argument: "It is sufficient if the act, or the failure to act, be done or omitted under such circumstances as would justify the reasonable inference that the driver should have known that injury to his guest was a probable result. . . ."

In *Rawlins* v. *Lory* (1941), 44 Cal.App.2d 20 [111 P.2d 973], the court states at page 24: "In determining whether the circumstances are sufficient to disclose implied knowledge of such probability, an external standard is applied. In *Stacey* v. *Hayes*, 31 Cal.App.2d 422 [88 P.2d 165], one of the authorities relied on by defendants, the court said at page 426, 'The probability of injury to the guest from such act or omission must have been an apparent consequence to a man of ordinary prudence and intelligence.'"

In *Jones* v. *Hathway* (1937), 22 Cal.App.2d 316 [70 P.2d 681], the court said at page 320 of its opinion: "With reference to a decision by this court on the issue which has been here presented, it is concluded that, as a presumably reasonable man, had he exercised due care, defendant must have known, or must have been conscious of and appreciated the fact that to drive an automobile at the place where, and under the atmospheric conditions which were known to exist, over a wet and slippery pavement, and at the rate of speed

at which, according to the findings of fact he did drive it, was likely to result in jury to the plaintiff.''

The Restatement of the Law of Torts, page 1293, section 500, specifically points out that an objective standard is to be applied in determining the question of implied knowledge of danger, as follows: ''The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.''

While the instruction points out the two different types of conducts constituting ''wilful misconduct,'' they are so bound together in the instruction that it is difficult for the lawyer, let alone a layman juror, to disintegrate and distinguish the two types through the maize of legal verbiage. Nowhere in the instructions given were they separately stated. Plaintiff, however, presented a detailed instruction setting forth in plain and concise language the two different types of conduct constituting wilful misconduct under the law. This was refused by the court.

Further, plaintiff at the trial presented a proper instruction defining wilful misconduct as laid down in *Turner* v. *Standard Oil Co.* and as modified in *Meek* v. *Fowler, supra.* This likewise was refused.

The court also instructed the jury in part as follows: ''But in order to be a basis for liability to a guest under our law *the misconduct must be something more than intentional and wrongful;* it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.'' [Emphasis added.] To my mind this instruction is clearly erroneous. In effect it tells the jury that even though the driver of an automobile may be guilty of wrongful and intentional misconduct, which was the direct and proximate cause of an accident in which plaintiff was injured, plaintiff cannot recover unless he further proves that the driver had knowledge that such wrongful and intentional misconduct would probably cause such accident and result in injury to plaintiff. The statute makes no such requirement. (Veh. Code, § 403.) The obvious result of holding

such proof necessary, is placing a greater burden upon a plaintiff in a civil action than is required of the people in a criminal prosecution to prove the guilt of a defendant for a violation of section 505 of the Vehicle Code.

Moreover, this instruction again omits the rule that the driver is equally guilty of wilful misconduct whether he knew or from the circumstances should have known that injury would probably result from his misconduct. It can be seen from this instruction and the last one, that the court was building up in the minds of the jurors a persistently exaggerated and enlarged requirement of actual knowledge and a specific intent in this civil action for wilful misconduct. Each instruction seemed to add a greater burden to the plaintiff. Had this error occurred but once it would not have been so serious, but it was committed time after time until it was impressed upon the minds of the jury more forcefully than any other statement in the entire charge.

The court gave several more instructions (ten altogether) defining wilful misconduct. They all followed the same general pattern. Practically all of the ten instructions were taken from the book of California Jury Instructions. In the case of *Hastings* v. *Serleto, supra,* a case practically on all fours with the present case on the essential facts, the trial judge at the time of instructing the jury made the following statement regarding California Jury Instructions in a wilful misconduct case: "The court: Well, wilful misconduct is that which the Court tells the jury it is, and that is all that is necessary in this case, for them to follow the definition given by the Court and apply the facts to that particular definition. I am not going to give any of the instructions in the Instruction Book used by the Superior Court, here, with reference to the guest law for the reason that I think they are so impossible and so improper and so confusing that I will not use any of them. I will draw my own, and I have already drawn my own, and I am not going to instruct the jury at all as to gross negligence, and I think I might just as well make my position clear, here." (Records of Supreme Court, vol. 9030, p. 289, p. 28 of Appellant's Opening Brief.)

Thereafter, the court gave the following instructions it had prepared pertinent to the issue of wilful misconduct: "Number 4: Under the laws of this state a guest in an automobile driven by another is not entitled to recover damages from the driver for injuries sustained as a proximate result of the

act of the driver, if such act is occasioned merely by the failure to exercise ordinary care, which is negligence. For a guest to recover damages from the driver of the car for injuries sustained as a proximate result of the act of the driver the guest must show by a preponderance of the evidence that the act of the driver—which it is claimed resulted in the injury—was occasioned either by the driver's intoxication or by his wilful misconduct. In the case before us the plaintiff does not claim that her injury was the result of any intoxication on the part of the driver but she does claim that it resulted from his wilful misconduct. By the phrase 'wilful misconduct' as used in the law is meant such conduct by a driver as amounts either to the intentional doing of an act with knowledge on his part that, as a consequence thereof, injury is a PROBABLE as distinguished from a POSSIBLE RESULT, or on the other hand, the intentional doing of an act with a wanton and reckless disregard for its possible result. In that connection, you are instructed that a driver is charged with knowledge of the probable consequence of his conduct, if such consequences would have been apparent to any person of ordinary prudence and intelligence.

"In considering the question as to whether the driver was or was not guilty of wilful misconduct you may take into consideration all the factors bearing on that question, such as, the width and surface of the highway; the extent it curved or angled; the presence or lack of traffic upon it; the time of night, the factor of visibility, the rate of speed with respect to the matters just narrated; and the intent of the driver as gathered from the surrounding circumstances and from the testimony with respect thereto.

"NUMBER 5: In order that an actor's conduct may be classed as reckless, or wilful it is not necessary that he, himself, should recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament, or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary reasonable and prudent man, the highly dangerous character of his conduct.

"NUMBER 10: The basic speed law of this State reads as follows:" (Quoted.) "The fact, if it be a fact, that the injury to the plaintiff resulted because the car was driven at a speed greater than was reasonable or prudent does not in

and of itself show that the driver was guilty of wilful misconduct. Whether he was or was not guilty of wilful misconduct is to be determined from the surrounding circumstances. The speed at which he traveled is one of such circumstances. If the speed under all the circumstances was so excessive as to make it evident to a reasonably prudent person that danger of injury to the guest was a real probability then such extreme speed alone would, without more, be wilful misconduct. Conversely, if the speed was not so excessive under all the circumstances as to make it evident to a reasonably prudent person that the danger of injury to the guest was a real probability then such speed would not, without more, be wilful misconduct.

"NUMBER 7: The intent which is a necessary element of wilful misconduct, as referred to in other instructions is not a mere intent to commit an act, but the intent must go to the wilful misconduct.

"NUMBER 7—(Continued): The word 'wilful' implies an intent and the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done." (Records of Supreme Court, volume 9030, pages 287 to 289, pages 25 to 28 of Appellant's Opening Brief.)

The case of *Hastings* v. *Serleto,* 61 Cal.App.2d 672, 686 [143 P.2d 956], in commenting upon the instructions given mentioned them all, and stated that they were complete, and that the court had no hesitancy in saying "that the jury was clearly, understandingly, and unerringly admonished, . . ."

However, in that case the court advised the jury what was meant by the term "intent," "which is a necessary element of wilful misconduct, . . . is not a mere intent to commit an act, but the intent must go to the misconduct." No such instruction, or any instruction comparable thereto, was given the jury in the present case, although such instruction was requested. Further, in the instant case there was more reason for such an instruction than in the Hastings case, in that the defendant had been permitted to testify that he didn't intend to have an accident or injure Dr. Cope. He was permitted to testify, to a lack of intent to commit an act, the kind of intent which is not required. As to what was meant by the terms "intent" and "intentionally" the jury was left to speculate.

Further in the *Hastings* v. *Serleto* case the jury was instructed that "a driver is charged with knowledge of the

probable consequences of his conduct, if such consequences would have been apparent to any person of ordinary prudence and intelligence.'' In another instruction in the above case the jury was advised that ''in order that an actor's conduct may be classed as reckless or wilful, it is not necessary that he himself should recognize it as being extremely dangerous. His inability to recognize the danger may be due to his own reckless temperament, or to the abnormally favorable results of previous conduct of the same sort.''

The court in commenting on these instructions said: ''We fail to perceive wherein the challenged instructions constituted serious or any prejudicial error which militated against the substantial rights of the defendants. The latter apparently base their attack upon the quoted instructions on the ground that they measure the required standard of defendant driver's conduct on the basis of what would be apparent to the ordinary, careful and prudent driver. Appellants' claim in this regard cannot be sustained. For the same reason that the law prescribes a standard for measuring the conduct of people in determining whether they are guilty of ordinary negligence, there must be a standard to measure the conduct of a vehicle driver charged with wilful misconduct, to determine whether such conduct was of the character contemplated by section 503 of the Vehicle Code. Of necessity that standard must consist of a comparison of the conduct of the driver in question with that of the average man, or to use the phrase so familiar to us, 'the ordinary, careful and prudent man' situated as the defendant driver was, seeing what he saw and knowing what he knew. Instead of misleading the jury as to the character and quantum of evidence required to support a charge of wilful misconduct, the questioned instructions merely gave the jury the universally applied standard from and by which they were to determine whether the actions and conduct of defendant driver amounted only to ordinary or gross negligence, or when viewed in the light of what, under the existent circumstances ordinary prudence and care would dictate, amounted to such recklessness, wantonness, and wilfulness as to approach that wilful misconduct contemplated by the code section upon which this action was predicated. It is noteworthy that appellants do not venture to suggest any different standard by which to measure the conduct of defendant driver than that contained in the challenged instructions. Manifestly, it can-

not be said that the conduct of defendant driver should be measured by the actions or behavior of a careless, and imprudent man, an intoxicated man or one who is an incompetent vehicle driver.''

The foregoing case, is very much like the present case, in that the driver knew the road over which he was traveling, knew it was a winding, narrow, mountain road, and notwithstanding such knowledge at the time of the accident the speedometer needle was stuck at 65 miles per hour. The court stated (page 684) : ''We are persuaded that the jury was justified in concluding, as apparently it did, that notwithstanding defendant driver's knowledge of the road over which he was traveling, and its hazards, he knowingly, deliberately and intentionally flirted with danger. The jury, we feel, were also authorized to conclude that any reasonable person knowing what the defendant knew and seeing what he saw, and confronted with the conditions which confronted him, would have realized that such wanton and reckless driving could result only in injury to those who were riding in the automobile, and certainly the jury was authorized, under the facts here present, to conclude that defendant driver was charged with the implied knowledge of not only the possible but the probable results of such conduct.''

From the foregoing statement of the court in commenting upon the evidence and law in the case, it is apparent how much importance it placed upon the yardstick of care required by the defendant as given in the charge to the jury. It further illustrates the importance of a proper instruction on the question of intent.

There is nothing in the case of *People* v. *Young*, 20 Cal.2d 832 [129 P.2d 353], which can be said to support the position of respondent in this case as that case did not involve section 403 of the Vehicle Code but was a prosecution under section 500 of said code which at that time read in part as follows: ''When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle with reckless disregard of, or wilful indifference to the safety of others, the person so operating such vehicle shall be guilty of negligent homicide, . . .'' The case did not involve an alleged erroneous instruction to the jury as it was tried before the court without a jury. Reference in the opinion in that case to wilful misconduct is contained in a

quotation from the case of *Howard* v. *Howard, supra,* and has been mentioned in the foregoing discussion.

I am convinced from a study of the record in the case at bar that a miscarriage of justice has resulted, and in view of the error in the instructions given by the court to the jury in defining wilful misconduct, a new trial should be granted.

For the reasons above stated I would reverse the judgment.

Appellant's petition for a rehearing was denied June 26, 1947, and opinion was modified to read as above. Carter, J., and Traynor, J., voted for a rehearing.