[Civ. No. 10764. First Appellate District, Division Two.—November 22, 1938.]

JOHN HOWARD, Respondent; CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Intervener and Respondent, v. LEONARD CLARK et al., Appellants.

Wm. M. Abbott, Cyril Appel and Ivores R. Dains for Appellants.

Sullivan, Roche & Johnson and Eustace Cullinan, Jr., for Respondent.

STURTEVANT, J.—At about 5:45 P. M. on April 29, 1936, a collision occurred between a car operated by the Market Street Railway Company and one of the trucks of the fire department of the City and County of San Francisco. The accident happened on Market Street in about the middle of the block between Sansome and Battery Streets. Leonard Clark was the motorman on the street car. Bert Millisich was driving the truck, seated on the right hand side, and the plaintiff, John Howard, a lieutenant in the fire department, was seated on the left of Millisich. Howard commenced an action against Clark and the Market Street Railway Company to obtain a judgment awarding him damages. As his compensation carrier the City and County of San Francisco intervened. The defendants answered and a trial was had before the trial court sitting with a jury. The jury returned a verdict in the sum of $5,000 in favor of the plaintiff Howard, and in the sum of $907.79 in favor of the City and County of San Francisco. A judgment in favor of the plaintiff and intervener was entered against the defendants. The latter made a motion for a new trial. The trial court made an order that unless the plaintiff filed a stipulation

waiving all in excess of $4,092.21 the motion would be granted. The waiver was filed as suggested by the trial court and thereafter the defendants appealed from the judgment as modified. In support of their appeal they have brought up a bill of exceptions together with the map used at the trial and known as plaintiff's exhibit one.

The plaintiff, Lieutenant John Howard, a lieutenant in the fire department, was connected with engine house No. 12 which is situated at 115 Drumm Street, San Francisco. At about 5:45 P. M. on said day an alarm was turned in and the firemen were called upon to respond to a call declaring a fire at Fourth and Market Streets. The fire truck left the engine house and proceeded to Market Street. Thence it turned up Market and traveling at about 20 miles per hour it slowed down to 15 miles an hour on approaching Battery Street. Having crossed that street the truck proceeded on its right hand side up Market Street. After it had traveled about 60 feet past the northwest corner of Battery and Market, the truck commenced to swerve to the left. Market Street has two sets of railroad tracks, each set includes a track for outbound cars, that is, cars running to the west, and a set of tracks for inbound cars running to the east. Commencing with the northerly rail the parties marked on the map numbers 1, 2, 3, 4, 5, 6, 7 and 8, indicating the rails of all of the tracks as one passes from north to south. The outside tracks are used by the municipal railway, the inside tracks by the Market Street Railway. A car, H–2, was stopped on the most northerly track just west of the above-mentioned corner of Battery Street. Another car, H–1, was also stopped almost directly south. Further to the west a car, H–6, was at a standstill on the track of the defendant company and the car H–4 was at a standstill on the outbound track of the municipal railway. Claiming to have sounded the siren and gong continuously from the time he left the firehouse down to the instant of the impact, the driver of the truck attempted to swerve from the northerly side of Market Street across rails 1, 2, 3 and 4, and pass up Market Street. There was evidence that the automobile lane on the north side of Market Street was congested with automobiles. In additon to the street cars above mentioned there was evidence of the presence of others, including the car operated by the defendant Clark. That car, H–7, was

being driven east. The record contains much evidence showing that at the particular hour when the accident happened, and at the same hour on every work day, traffic is greatly congested in the neighborhood of the locality where the accident happened. As the driver started to cross the street car tracks he shifted gears and was traveling, as he testified, about eight miles an hour. He further testified that at that time he was 25 or 35 feet from the nearest west-bound Market Street car. That car was in a stationary position. The truck was then traveling in a southwesterly direction. Millisich testified he first saw car H–7 when the front of it was about opposite the middle of car H–4, that is, about one and one-half car lengths away from him. As to that distance it will be conceded there was a conflict in the evidence. At that time his truck had its front wheels on rail number 4. It was traveling about five miles an hour. It proceeded forward about eight feet, then the collision occurred. The driver of the truck testified that car H–7, when he first saw it, was traveling about 20 miles an hour. Later it slowed down, but at the time of the impact it was traveling about 10 miles an hour. Before the impact the fire truck was headed southwest. After the impact it was headed southeast. The plaintiff claimed there was a space of about 90 feet, between the front end of car H–2 and the rear end of car H–4, through which the fire truck attempted to pass. That distance is controverted by the defendants. However, it is clear when the driver of the truck saw car H–7 approaching he tried to avoid the collision and the defendant Clark at about the same time saw the truck, slugged his car, and attempted to avoid the collision. The defendants argue that the driver of the truck attempted to pass immediately from behind car H–4 and out in front of car H–7. Conceding that the evidence is conflicting as to the length of the space through which the truck attempted to pass, we think it is clear it may not be said the driver of the truck attempted to pass immediately behind car H–4. The defendants claim the siren and gong on the truck were not sounded. On that subject there was a substantial conflict in the evidence. The defendants further contend the driver of the truck, at the time he saw car H–7, should have turned to the right and thus have avoided the accident. He testified that he at-

tempted to stop and go into reverse but did not have time to do so.

The defendants concede that those operating emergency vehicles are bound to exercise only ordinary care but they claim that under the facts of this case those operating the fire truck were bound to exercise a greater amount of ordinary care. They do not specifically mention any act or acts, except as we have herein noted, which said operators should have done and which they omitted to do.

The defendants point to the fact that the plaintiff, the person in charge of the fire truck, did not stop Millisich from doing what he did, nor issue any directions or commands. They do not state what should have been stopped nor what direction should have been given or when. From what has been said above it is clear Millisich had the better view of the situation and that in the short space of time the plaintiff had but a slight opportunity to speak if he wanted to.

Although the parties have not so presented their points, it is clear the defendants claim, (1) they were not negligent, (2) Millisich was negligent, and (3) plaintiff was negligent and that the negligence of Millisich was imputable to the plaintiff.

■ If, when car H–7 was first seen by Millisich, it was traveling 20 miles per hour, as testified by certain witnesses, it was violating section 46 of the Traffic Ordinance of San Francisco which fixed a maximum speed of 15 miles per hour at that time and place. If the siren and gong of the fire truck were sounding, as testified by several witnesses, car H–7 should have been stopped and should not have been moving at all. (Sec. 554, Vehicle Code.) There was evidence that both laws were, at the time of the accident, being violated and it cannot be said as a matter of law that the defendants were not negligent.

■ If Millisich, in crossing to his left, did so in the manner testified by him, he was not, as a matter of law, guilty of contributory negligence. (Sec. 517, Vehicle Code; sec. 8, art. II, Traffic Ordinance of San Francisco.) The question of fact was submitted, on substantial evidence, to the jury and that body by its verdict has decided the question in favor of the plaintiff.

Under the authorities cited above the plaintiff was not guilty of contributory negligence as a matter of law and as

a question of fact the jury so found. Nor was he so guilty because of his relation to Millisich. As shown above we cannot say the latter was guilty of negligence, hence there was no negligence to be imputed to the plaintiff.

The defendants quote section 2 of rule 22 of the rules and regulations of the San Francisco fire department, which is as follows: "Section 2. The rate of speed at which motor apparatus may be driven when responding to alarms of fire, special calls, or covers in, shall not exceed 20 miles an hour. On approaching intersections the rate of speed shall be reduced to 15 miles an hour. On approaching and passing over stop and arterial crossings extra special caution and further reduced speed shall be the rule. On all occasions other than as above specified the apparatus of the Department shall be driven in strict compliance with all local, municipal and state traffic laws and ordinances." They then quote section 16 of the Traffic Ordinance of the City and County of San Francisco which is as follows: "Section 16, Left Turns Prohibited.—The operator of a vehicle shall not, between the hours of seven (7) a. m. and six (6) p. m. of any day, excepting Sunday and legal holidays, make a left turn upon any part of Market Street between the easterly line of The Embarcadero and a prolongation of the easterly line of Eleventh Street. . . . " Thereupon they contend that the truck was operated negligently. The point has no merit. The evidence above set forth does not disclose that the driver of the truck violated section 2 of rule 22 of the fire department and section 15 of the Traffic Ordinance was not applicable to the truck when engaged in the necessary performance of emergency duties. (Sec. 8 of the Traffic Ordinance.)

While instructing the jury the trial court gave certain instructions which were formula instructions. The defendants attack many of them. Those attacks are based on the contention that they omitted material elements and thus did not fully state the rule which they purported to cover. Space will not permit us to set forth each one. Picking up what we understand to be the defendants' most earnest contentions, we specially note the following. Instruction 41, given at the plaintiff's request, was as follows: "If you believe from the evidence that at the time and place referred to in the complaint, plaintiff suffered the injuries, or any of

the injuries, described therein through the negligence of defendant in the operation of a certain electric street railway car, and that plaintiff was not himself guilty of any negligence which proximately contributed to said injuries, if any, I charge you that your verdict must be in favor of plaintiff and against defendants." The defendants contend it omitted "imputed negligence of plaintiff", and that it omitted "proximate cause as respects defendants' negligence". They set forth instruction 58, given at the request of the plaintiff, which is as follows: "If you believe from the evidence that at the time and place referred to in the complaint, plaintiff suffered the injuries, or any of the injuries, described therein through the negligence of defendants in the operation of a certain electric railway car, and that neither plaintiff nor anyone whose negligence was imputable to plaintiff was guilty of any negligence which proximately contributed to said injuries, if any, I charge you that your verdict must be in favor of plaintiff and against defendants." They contend that it omitted "proximate cause". In a similar manner they attack numerous other instructions. It will be conceded at once that the attacks are technically sound but we are wholly unable to find that any one of the errors constituted prejudicial error. Although the evidence in the printed bill of exceptions comprises 850 folios, the instructions given to the jury included over 400 folios. Every issue of law involved in the trial was covered and recovered numerous times. It may properly be said that some instruction was more nearly complete than another one. However, we do not find that any two instructions were conflicting. The record shows it was quite impossible that an intelligent jury could have failed to fully and completely grasp each rule of law stated by the trial court.

The defendants requested and the trial court refused to give an instruction applying to the case the doctrine of the last clear chance. The defendants vigorously contend such refusal constituted reversible error. We think not. The only evidence as to the ability of Millisich to avoid the accident after he saw the danger was given by him. The burden of proving his negligence rested on the defendants. They did not sustain that burden. Millisich testified he stopped, tried to go into reverse, and failed in the attempt. He testified that traveling at five miles per hour he could have stopped

in two or three feet from the time that he actually could grab and pull the brake. He actually went forward about eight feet. He gave no further testimony on the subject. No evidence was given by any other witness that Millisich could have avoided the accident after he saw the danger. The contention of the defendants rests wholly on their arguments as to what could have been done under the circumstances. That argument is when the front wheels of the truck were on the fourth rail and Millisich saw car H-7 and realized the danger, he should have swung the truck to the right and headed it west on Market and parallel with the tracks. But this court may not say as a matter of law that a fire truck, weighing between seven and eight tons, could, under the facts then existing, have been so handled.

The defendants assert the plaintiff was guilty of prejudicial misconduct in inferring defendants had suppressed evidence. That assertion is based on these facts. The defendants called as a witness Glenn McDonnell who was the conductor on car H-7 at the time of the collision. On cross-examination he was asked if, after the accident, he solicited the names of witnesses. Defendants objected. The attorney for the plaintiff stated in explanation, ''If the gentleman made diligent efforts to get witnesses, then according to the rules of evidence he did not produce them that is a very material fact.'' The court ruled the explanation was entirely improper. In making his closing argument to the jury the same attorney said, '' . . . don't you think that if there were any witnesses—that there were witnesses that observed this accident known to the defendants here who have not been produced? What inference do you get from that?'' The defendants promptly interrupted and assigned the remark as misconduct. The trial court stated to the jury there was no such evidence and directed the jury to disregard the statement. Conceding the acts and words of the plaintiff's attorney to have been error, we are wholly unable to hold such error caused a miscarriage of justice.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 22, 1938, and an ap-

382

plication by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 19, 1939.