[Civ. No. 16345.   Second Dist., Div. Three.   Dec. 8, 1948.]

PAUL J. COLLAS, Appellant, v. PASADENA CITY LINES, INC. (a Corporation) et al., Respondents.

P. E. Cavaney for Appellant.

Hugh B. Rotchford, Chase, Rotchford, Downen & Chase and Richard T. Drukker for Respondents.

VALLÉE, J.—Plaintiff appeals from a judgment entered upon the verdict of a jury in favor of defendants in an action for damages for the wrongful death of his infant son, aged 3 years and 8 months, caused when a passenger bus owned by defendant Pasadena City Lines, Inc., a corporation, and driven by defendant Bond, collided with the infant.

The accident occurred on August 31, 1945, at about 6:45 p.m., daylight saving time, at the intersection of Colorado Boulevard and Fair Oaks Avenue in Pasadena. Colorado Boulevard runs in an easterly-westerly direction and is approximately 70 feet wide. Fair Oaks Avenue runs in a southerly-northerly direction and is approximately 50 feet wide. The intersection is controlled by four automatic signals, which were in operation at the time of the accident. It also has four well-marked crosswalks, which are approximately 12 feet, 6 inches wide. The bus was approximately 8 feet wide, 33 feet long, and had a seating capacity of 32 passengers. At the time of the accident the infant was crossing Colorado Boulevard with his sister, Pauline, aged 18 years, in the marked pedestrian zone, proceeding from the southerly to the northerly curb of Colorado. Immediately before the impact he broke away from his sister, ran out directly into the path of the bus as it was making a right-hand turn onto Colorado Boulevard from Fair Oaks Avenue and was instantly killed.

The point of impact was established as being "approximately 15 feet, 6 inches, north of the south curb of Colorado Street, and approximately 10 feet east of the east curb line of Fair Oaks," and "approximately 2 feet within the crosswalk." The bus traveled approximately 2 feet from the point of impact.

A coroner's inquest was held on September 4, 1945. The coroner's jury found the death to be accidental and exonerated defendant Bond from blame. The testimony taken at the inquest was admitted in evidence at the trial.

Plaintiff contends that the evidence is insufficient to support the verdict of the jury because it indicates, as a matter

of law, that defendants were guilty of negligence in that defendant Bond (1) drove the bus at a greater rate of speed than was prudent, (2) did not yield the right-of-way to the infant in the crosswalk, (3) did not sound his horn, (4) did not exercise due care or operate the bus in a careful and prudent manner, and (5) did not have proper control over the bus. It is evident from the record that this contention is without merit. Appellant overlooks the fact that these issues were submitted to the jury and, upon the evidence presented to them, were resolved in favor of the defendants.

█ The question of negligence is generally one of fact, and where it is contended upon an appeal that the evidence is insufficient to support the verdict, the reviewing court is not empowered to reverse the judgment if there is substantial evidence to support the verdict. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; *Sunseri* v. *Dime Taxi Corp.*, 57 Cal.App.2d 926, 934 [135 P.2d 654] ; *Hinds* v. *Wheadon*, 67 Cal.App.2d 456, 465 [154 P.2d 720].) █ It is only when there is no substantial conflict as to the facts, and from the facts reasonable persons can draw only the inference that defendants were negligent, that the reviewing court will disturb the verdict of the jury. (*Crawford* v. *Southern Pacific Co.*, *supra*, p. 429 ; *Sunseri* v. *Dime Taxi Corp.*, *supra*, p. 934.)

Defendant Bond testified that just before the accident he had stopped his bus south of the pedestrian crosswalk on Fair Oaks Avenue at Colorado Boulevard and had taken on three passengers. He kept his engine running and, because he was "about two minutes early," waited for two signal changes. He then proceeded north on Fair Oaks, giving a signal for a right-hand turn and going "not over 5 miles an hour." When he came "almost to the center line" of Colorado Street, he started to make his right-hand turn, "nearly stopped" the bus, and then proceeded "very slowly . . . about two miles an hour," to make his right-hand turn. From the time he started his turn until the impact he looked to his right "through the right side windows of the bus" for pedestrians, but saw none in the crosswalk. He did not blow his horn. He had only completed about one-third of the turn when he felt his right front wheel run over an object. He immediately applied the brakes and stopped. The impact occurred "just inside the east line of the pedestrian zone." When he observed the body it was about 2½ feet outside the pedestrian zone and approximately 2½ feet back of the right front wheel.

One of the witnesses who testified at the coroner's inquest, Donald Lee Marengo, stated that he was on the southeast corner of Colorado and Fair Oaks when the accident happened. It "sort of looked like" the little boy had broken away from his sister and had run in front of the bus, and he so told the officers investigating the accident.

John C. Elliott, one of the policemen investigating the accident, testified that a complete set of measurements was made at the time; that the impact "occurred within the boundaries of the marked crosswalk or pedestrian zone"; that the body came to rest "approximately five feet" east of the east boundary of the crosswalk. Immediately after the accident he talked to the infant's sister, who stated, in substance, that her "brother broke away from her and ran directly in the path of the bus." The sister admitted on the stand that she made this statement to the officer.

The sister, Pauline, at the inquest and at the trial, gave an entirely different version of the accident, stating, in substance, that at no time did her brother run away from her or was he "loose from her hand." She admitted, under cross-examination, that she gave the following testimony at the inquest: "Question: When you started across the street, did you see the bus? Answer: No, I didn't see it coming, no. . . . Question: You didn't see the bus at any time? Answer: No, I was looking to go across on the north side. Question: When you looked across the street, did you look in both directions, east and west? Answer: No, I was looking north to go across the street because the light was green, it was my time to go across the street. Question: When you got out in the crosswalk, did you look in either direction? Answer: No, I was looking north. Question: All the time? Answer: Yes. Question: You did not see the bus at all? Answer: No."

Allen Harvey, a witness for the defense, was standing on the northeast corner of the intersection of Fair Oaks and Colorado Boulevard at the time of the accident. He had walked across the street and turned "around just in time to see the bus hit the baby." He testified that he did not see anyone with the boy; that the bus was going "slow"; that he telephoned for the ambulance.

The evidence is in conflict. The jury was the sole judge of the credibility of the witnesses and the weight of the evidence and its decision upon the question here presented—the negligence of the defendants—was solely within its province. ▉ There is sufficient substantial evidence in the

record to support the conclusion of the jury that defendant Bond was operating the bus in a careful and prudent manner at the time the infant suddenly ran in front of him. Since just before the impact no danger whatever was apparent, the jury could reasonably have concluded there was no duty on the part of defendant Bond, as a reasonably prudent person, to sound his horn. (*Moss* v. *Stubbs,* 111 Cal.App. 359, 368 [295 P. 572, 296 P. 86]; *Edelson* v. *Higgins,* 43 Cal.App.2d 759, 761 [111 P.2d 668].)

Appellant's contention that respondents' counsel was guilty of misconduct in that "highly prejudicial" statements were made in his opening statement, in questions propounded to the deceased's sister, Pauline, in an effort to discredit her before the jury, and in his argument to the jury, and that by reason thereof he has been deprived of a fair trial, is without merit. The rule governing our consideration of the point is stated in *Cope* v. *Davison,* 30 Cal.2d 193, 202 [180 P.2d 873, 171 A.L.R. 667]: "It has been said that 'As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. Where the action of the court is not thus invoked, the alleged misconduct will not be considered on appeal, if an admonition to the jury would have removed the effect. It is only the most extreme case where an instruction to the jury, if given, would not remove the effect of improper remarks.' (*Aydlott* v. *Key System Transit Co.,* 104 Cal. App. 621, 628 [286 P. 456].) The record in the present case shows no assignment of misconduct and the trial court was not asked to instruct the jury to disregard the challenged remarks. The point may not, therefore, be considered upon appeal." In the present case no objection to the questions propounded to Pauline, or to any of the remarks made in the opening statement or argument was made by appellant's counsel, nor did he request the court to admonish the jury to disregard them, and the point may not be considered here.

Appellant further argues that the failure of counsel for respondents to produce a cab driver to contradict denials made by Pauline concerning a conversation with the cab driver respecting her injuries, was "highly prejudicial" and

"constitutes reversible error." Appellant did not at any time ask the court to instruct the jury to disregard the questions asked Pauline concerning the cab driver nor did he request the court to instruct the jury with respect to the failure of respondents to call the cab driver. (Code Civ. Proc., § 2061, subds. 6, 7.)

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.

A petition for a rehearing was denied January 6, 1949.