[Civ. No. 13921. First Dist., Div. One. June 23, 1949.]

DANIEL O'CONNOR et al., Individually and as Administrators With the Will Annexed, etc., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

628

Elkins & Wright and William C. Burns for Appellants.

Dion R. Holm, City Attorney, and George E. Baglin, Deputy City Attorney, for Respondent.

BRAY, J.—After judgment for defendant in an action for the death of a person struck by a San Francisco streetcar, plaintiffs appealed. They also attempted to appeal from the order denying their motion for new trial. No such appeal lies.

Plaintiffs, son and daughter of the deceased, sue individually and as administrators with the will annexed of her estate.

### GROUNDS OF APPEAL

1. Insufficiency of the evidence. 2. Erroneous instructions. 3. Prejudicial misconduct of defense counsel.

1. EVIDENCE

The evidence clearly shows the negligence of the motorman operating the streetcar. It also clearly shows the contributory negligence of the deceased. There is not a great deal of conflict in the testimony of the witnesses, except, possibly, as to the location of the deceased when struck. The accident occurred at about 2:30 p. m. March 28, 1945, at Market and Fourth Street in San Francisco. At that point there were two sets of tracks on Market Street, for each direction, i. e., east and west. The streetcar was proceeding east on the inner eastbound track. It had stopped at the Emporium a short distance from Fourth Street. One of the passengers pressed the buzzer for the motorman to stop at Fourth Street. Approaching that street the car did not stop but increased its speed. In the opinion of at least two witnesses the car was going "too fast." It was a clear, sunny day, and there were no trucks or other vehicles to obstruct the motorman's view. The bell was not sounded.

The deceased, Mary Heffernan, was 84 years old. Her son described her health at the time of the accident as "very good." However, she was partially blind in one eye, and the autopsy revealed that she had a marked "arteriosclerosis of the cerebral vessels." Mrs. Heffernan's original position was in front of a jeweler's store near the southeast corner of the intersection. She left the curb and started to cross Market from south to north. She was walking with a cane. No other traffic was crossing Market at the time. No witness testified that she used the crosswalk for this purpose. Plaintiffs' counsel stated in his opening argument that she was about 10 or 15 feet east of the crosswalk. Two witnesses placed her about 20 feet east of the easterly line of the crosswalk. One witness testified "she was not right in that painted white section, she was so near it that she was in it," although in a statement made shortly after the accident she placed Mrs. Heffernan as crossing 50 to 60 feet east of the crosswalk. Mrs. Heffernan was well out into the street as the car approached. She stepped onto the track when the car was only a short distance away. The motorman had been looking at the witness who was demanding that she be let off the car. When he saw Mrs. Heffernan, he tried to stop the car, but it was too late. After striking Mrs. Heffernan the car proceeded about half a car's length. After being hit by the car Mrs. Heffernan was lying on the westbound car tracks about 10 to 25 feet east of the

crosswalk. A police officer located at Ellis and Market Streets (a part of the Fourth and Market intersection, and less than 140 feet from the easterly line of the easterly crosswalk), was notified of the accident and at that time the streetcar was just coming to a stop and the traffic signal was "Go" for traffic on Market Street. The signal was set so that the "Go" lasted 30 to 40 seconds. None of the other witnesses noticed the situation of the traffic signal at or near the time of the accident. The streetcar was stopped quickly, its position then being variously described as half a car's length beyond the place of the accident, quite a way down the street, and two car lengths past the location of the body. The motorman was not called as a witness.

It is obvious from the record that the evidence was sufficient to sustain the implied finding of the jury that Mrs. Heffernan was crossing the street outside the crosswalk, against the traffic light, and walked onto the tracks in front of the approaching car and was contributorily negligent.

2. INSTRUCTIONS

The most serious point in the case concerns the giving of two of the instructions. (For convenience of reference we have lettered these instructions (A) and (B).) They read: (A) "The tracks of a street railway company are in themselves a sign of danger, and one walking in the vicinity of the tracks of a street railway company ordinarily must exercise his faculties of sight and hearing and watch and listen for cars going in every direction. If he fails so to do, and in consequence thereof is injured, he may be found guilty of contributory negligence and may be denied recovery against the defendant City and County of San Francisco." (B) "Where the evidence is as consistent with a neglect of duty or care on the part of the decedent, Mary Heffernan, as it is with a neglect of duty or care on the part of the defendant charged with causing the injury, the plaintiffs cannot recover."

In *Gillette* v. *San Francisco*, 41 Cal.App.2d 758, 764 [107 P.2d 627][1], two instructions which were practically identical with those above set forth were condemned (with one other not given here) on the ground that "Each instruction wholly ignored the element of proximate cause. Each was, in effect, an instruction to the jury, under the conditions specified in

---

[1]This is the first Gillette appeal. There was a second appeal. See *Gillette* v. *San Francisco*, 58 Cal.App.2d 434 [136 P.2d 611].

each instruction, to bring in a verdict in favor of the defendants. But that was not the law. Although the plaintiff may have been negligent, if his negligence was not a proximate cause of his injuries it did not constitute a defense. (19 Cal.Jur. 561.) ''—and were inconsistent with the instructions given on the last clear chance doctrine. A minor distinction between the Gillette case and ours is that there, the evidence as to the contributory negligence of the plaintiff was highly conflicting and the plaintiff relied ''principally on the application of the doctrine of the last clear chance.'' (P. 764.) The question here is whether under the particular facts of this case the giving of the instructions, which were held to be erroneous in the Gillette case, was prejudicial. In this case, the court fully instructed on the last clear chance doctrine. It likewise instructed fully on all phases of the case. In the Gillette case, the court held that an instruction to the effect (as was given here) that the jury were to consider all the instructions as a whole and not select a single one, was not sufficient to cure the error. It is curious that in the Gillette case there was no discussion of the many cases which had held that the failure to include proximate cause in a particular instruction was not prejudicial error where the subject had been fully covered by other instructions.

An instruction similar to instruction (B) was held not prejudicially erroneous as omitting the element of proximate cause where the jury, as in this case, was fairly and fully instructed elsewhere on the subject of proximate cause and contributory negligence, in *Mahoney* v. *Murray,* 140 Cal.App. 206 [35 P.2d 612]. A similar instruction was approved in *Miller* v. *Dollar Steamship Lines, Inc.,* 19 Cal.App.2d 206, 212 [64 P.2d 1163]. In *Jewell* v. *Bell,* 120 Cal.App. 682 [8 P.2d 223], the court instructed that stopping upon the paved highway in violation of the Motor Vehicle Act constituted conclusive negligence. The instruction was attacked as omitting the element of proximate cause. The court stated (p. 687) : ''The jury were fully instructed on proximate cause and were repeatedly told that they could not bring in a verdict against appellants unless they found that Sauls was negligent and his negligence proximately caused the injuries and death. . . . Taking the instructions as a whole, we are satisfied that the jury cannot have been misled by the criticised instruction, nor have regarded it as a formula instruction.'' In our case the jury was fully instructed on proximate cause.

In *Howard* v. *Clark*, 29 Cal.App.2d 374 [84 P.2d 529], the court gave certain instructions which stated that if the jury found certain conditions to exist their verdict must be for plaintiff. Defendants contended that these instructions omitted "imputed negligence of plaintiff" and "proximate cause as respects defendant's negligence." The court said (p. 380) : "It will be conceded at once that the attacks are technically sound but we are wholly unable to find that any one of the errors constituted prejudicial error. . . . It may properly be said that some instruction was more nearly complete than another one. However, we do not find that any two instructions were conflicting. The record shows it was quite impossible that an intelligent jury could have failed to fully and completely grasp each rule of law stated by the trial court." In *Klenzendorf* v. *Shasta U. H. School Dist.*, 4 Cal.App.2d 164 [40 P.2d 878], certain instructions were claimed to be erroneous as not containing proximate cause. The court stated (p. 171) : "Appellants also criticise two so-called formula instructions, one because it failed to state that lack of care on the part of plaintiff must be found to have proximately or directly contributed to the injury in order to bar his recovery, and the other in that it purported to inform the jury that if certain facts are found by them they must find for the defendants, taking from the jury the right to determine whether or not the hypothetical facts recited constituted negligence. We have read and compared the numerous instructions given and believe as a whole the jury were fully and fairly instructed. As Mr. Chief Justice Waste said in *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 P. 237] : 'Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed. We will not assume that they may not have understood the charge as we understood it. The instructions must be considered in their entirety, and if, after so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable, even though by selecting isolated passages from single instructions they may in some respects be amenable to just criticism.' And in *Reuter* v. *Hill*, 136 Cal.App. 67 [28 P.2d 390], 'There is a disposition to relax the rigid application of the rule regarding formula instructions which is announced in *Beyerle* v. *Clift*, 59 Cal.App. 7 [209 P. 1015], and other similar cases since the

adoption of article VI, section 4½, of the Constitution, where the record fails to show a miscarriage of justice.' "

Again, in *DeFries* v. *Market St. Ry. Co.*, 31 Cal.App.2d 463 [88 P.2d 256], in considering a construction concerning the failure of a plaintiff to exercise his faculties of sight and hearing, the court said (p. 467): "This instruction is one often given in similar cases and its vice, if any, was in the neglect to add to the instruction a provisional statement that it was to be considered with or was subject to other given instructions. However, the usual instruction 'You are cautioned not to select a single instruction, or a portion of an instruction alone, but to consider all of the instructions in determining any issue in this case' was given, which directed that not any single instruction was determinative of any issue in the case." Further, concerning this instruction the court said: "Standing alone, the first questioned instruction does not contain a full explanation or exposition of the divergent theories advanced by appellants and respondent but, in conjunction with the last clear chance instruction, it may not be said that the jury misconceived or ignored the theory presented by respondent. It is impossible at times to state all of the law in a single instruction. The instructions must be read as a whole. The first instruction upon its face appears to be a peremptory direction to find for the appellants, but when read in the light of the last clear chance instruction, it simply carried out the rule to present any theory upon the issues advocated in the pleadings and supported by essential and substantial evidence."

In *Bennett* v. *Chandler*, 52 Cal.App.2d 255 [126 P.2d 173], decided subsequent to the Gillette case, the court gave an instruction that if the defendant drove his truck on the left hand side of the road at the place of the accident, he was negligent, and the jury's verdict must be against him. As to this instruction the court said (p. 263): "It is further pointed out that the instruction lacks the essential fundamental elements of proximate cause. (19 Cal.Jur. 636, § 67.) This latter portion, however, may be and is cured by the fact that the trial court in another instruction correctly stated the general rule of proximate cause and specifically gave appellants' instructions to the effect that the burden of proof was upon respondent to prove by a preponderance of the evidence that defendants were negligent and that such negligence was a proximate cause. This instruction was followed

by a general instruction . . ." similar to the instruction given here that the jury was to regard the instructions as a whole. (See, also, *Aubel* v. *Sosso*, 72 Cal.App. 57 [236 P. 319], and *Will* v. *Southern Pacific Co.*, 18 Cal.2d 468 [116 P.2d 44].)

In the Gillette case, too, there is no consideration of the fact that the instruction similar to instruction (A) here uses the phrase "and in consequence thereof." In *Dougherty* v. *Ellingson*, 97 Cal.App. 87 [275 P. 456], the court said (pp. 93-94): "Instruction XV, reading as follows: 'If you believe from the evidence that either or both of the two automobiles involved in this collision were driven or operated in violation of any express provision of the Motor Vehicle Act of the State of California, and that *by reason thereof* (italics ours) the plaintiff sustained injury and that she was herself free from contributory negligence, then your verdict shall be in favor of said plaintiff and against the defendant or defendants, guilty of such violation, without further proof of negligence on the part of such defendant or defendants,' is criticised by appellant Ross because of an alleged omission of the element of proximate cause. This objection is untenable, for the italicized phrase included in the instruction such element, and required a finding that the violation be a proximate cause of the collision and injury before the jury could find a liability therefor. 'The use of the words "by reason of" instead of "as the direct and proximate result of" by the court below in paragraph 5 of its charge was not misleading to the jury as the words first quoted were the equivalent of those last quoted and, perhaps, would have been more easily understood by the average jury.' [Citing cases.] Similar phrases in analogous instructions have been held to sufficiently include the element of proximate cause. [Citing cases.]"

In *High* v. *Waterloo C. F. & N. Ry. Co.*, 195 Iowa 304 [190 N.W. 331], it was held (p. 337 [190 N.W.]): "It is urged that the court failed to instruct on the question of proximate cause. The words 'proximate cause' do not appear in the instructions, but the court told the jury, in effect, that appellee could only recover if struck and injured 'in consequence' of appellant's negligence. The jury could not have been misled as to the question of proximate cause under the instructions given."

In addition to instruction (B), the court gave the following instructions on the same subject matter: "To put the matter in another way, if, after considering all the evidence, you should find that it is just as probable that either the defendant

was not negligent, or if he was, his negligence was not a proximate cause of the accident, as it is that some negligence on his part was such a cause, then a case against the defendant has not been established. By the same principle, if you should find that it is just as probable that plaintiff was free from negligence, or even negligent, that her negligence did not contribute as a proximate cause of the injury, as it is that negligence on plaintiff's part did contribute as a proximate cause, then the defense of contributory negligence has not been established.''

The court fully and fairly instructed on all possible phases of the case, including an instruction on the presumption that deceased used ordinary care for her own safety and one on imminent peril. Very closely following instructions (A) and (B) is an instruction defining contributory negligence as an act or omission by an injured party which, cooperating with the negligent act of defendant, was the proximate cause of the injury.

After the jurors had been deliberating, they returned to the courtroom and asked for further instructions on the last clear chance doctrine. After giving the jury the required elements of the doctrine, the court briefly discussed matters which would constitute contributory negligence by deceased, and ended: ''And the general rule is, that where the negligence of the injured party is a contributing *proximate cause* of the accident, he cannot recover damages.'' (Emphasis added.) The failure to mention proximate cause in instructions (A) and (B) was cured under the facts of this case by the many instructions given on the subject by the court and by the clearing up of any confusion which might have existed by the very clear instructions given to the jury when they returned to the courtroom. Moreover, under section 4½ of article VI of the Constitution, there was no miscarriage of justice. It is not reasonable under the facts of this case to assume that either the omission of instructions (A) and (B) entirely, or the addition thereto of the element of proximate cause, could have resulted in a different verdict.

Another instruction complained of was the following: ''A street car has from necessity a right of way over that portion of the street upon which alone it can travel paramount to that of persons and ordinary vehicles, though this superior right is not exclusive and does not prevent others from standing along its tracks at any place or time when by so doing it

will not materially interfere with the progress of the cars. It is the duty of persons on foot, when necessary to avoid a collision, to give unobstructed passage to the cars, which cannot turn to leave the tracks, and a street car motorman is not required to presume that such person will fail in her duty in such respect." In *Abelseth* v. *San Francisco*, 129 Cal.App. 552 [19 P.2d 53], practically the same instruction was condemned on the ground that it wholly ignored the provisions of an ordinance which then required a streetcar to stop before entering a marked crosswalk if there was a pedestrian in it. In our case, there was no such ordinance. A somewhat similar instruction appears in B.A.J.I. instruction 202-C. (See, also, *Salvo* v. *Market St. Ry. Co.*, 116 Cal.App. 339 [2 P.2d 585], and *O'Connor* v. *United Railroads*, 168 Cal. 43 [141 P. 809].)

█ Plaintiffs also complain of an instruction which quoted Vehicle Code, section 563, to the effect that pedestrians must not cross the roadway against a red or stop signal and except in a crosswalk, and that if deceased did either she was guilty of contributory negligence and plaintiffs could not recover, on the ground that it did not include the duty of the motorman to use ordinary care, and omitted the required conditions as to proximate cause and contributory negligence. The court fully instructed elsewhere as to these matters. The objection to this instruction is unsound. It is impossible to cover all the applicable situations and law in each instruction. This instruction must be read in the light of all the other instructions.

█ Finally, plaintiffs attack certain instructions given on the last clear chance doctrine. The instructions were as follows: "With reference to the doctrine of last clear chance, I instruct you that the plaintiff was not in a position of danger until she stepped on the street car track, and that the motorman at all times until plaintiff did step on the track was entitled, in the exercise of ordinary care, to assume plaintiff would stop short of the track and not step in front of his car. If at the time the plaintiff stepped on the track the motorman had no clear chance to avoid striking the plaintiff, there is no room for application of the last clear chance doctrine." "While the operators of street railroads are to be held to due care in the management of their lines, they, when exercising such care, are not responsible in damages to a person who, in a careless, or reckless or absent-minded way, walks suddenly in front of a moving car and is injured before there is time to stop it. The person in charge of a car with a clear track before him has a right to assume that people will

not suddenly undertake to cross in front of it; otherwise he could not make any headway, and no street car line could be successfully operated, either for the profit of the owner or the convenience of the public. And the general rule is, that where the negligence of the injured party is a contributing proximate cause of the accident, he cannot recover damages.''

After deliberating for a period the jury returned for further instructions, particularly with respect to the doctrine of last clear chance. The court specified the six conditions required for application of the doctrine, and summarized: ''If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions the law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the deceased.'' The court then repeated the instructions on last clear chance which it had given the jury before their retirement.

Plaintiffs take portions of these instructions and complain that those portions do not contain all the elements of last clear chance and of proximate cause, and that they enlarge the doctrine of last clear chance by the addition of conditions additional to those required by law. These instructions must be considered with all the instructions as a whole, and do not have the claimed effect, or, as suggested by plaintiffs, require a verdict for defendant.

While the court did not give the instructions on last clear chance offered by plaintiffs, those it gave were fully as complete and proper as those offered. Plaintiffs' main objection seems to be that at the same time the court gave instructions as to the duty of the deceased. Plaintiffs also claim that in giving the six conditions of the last clear chance doctrine the court seemed to assume that Mrs. Heffernan was negligent. The court did not assume it. It stated that to apply the doctrine, the jury must first find that she had negligently placed herself in a position of danger. This is the law. (See *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915].) That these instructions were proper is fully supported by *Behne* v. *Pacific Electric Ry. Co.*, 30 Cal.App.2d 437 [86 P.2d 843], and *Gore* v. *Market St. Ry. Co.*, 4 Cal.2d 154 [48 P.2d 2].

On the whole, the court's instructions were full and fair, and if in any respect erroneous, were not prejudicially so. As we pointed out with reference to instructions (A) and (B), the record discloses that there was no miscarriage of justice.

"Unless upon a consideration of the entire case, including the evidence, it appears that the error complained of has resulted in a miscarriage of justice, a judgment will not be reversed by reason of an erroneous instruction." (*Perbost* v. *San Marino Hall-School*, 88 Cal.App.2d 796, 801 [199 P.2d 701].) The main objection of plaintiffs to all the questioned instructions is that each does not contain all the elements of the case. As said in the Perbost case, *supra*, page 820: "The virtue of one instruction cannot be determined by extracting it from the context of the entire charge to be criticized as if it alone were given. .... The court is not required to state all the law in any one instruction."

### 3. ALLEGED MISCONDUCT

■ This consisted of questions by defendant concerning the value of the estate left by Mrs. Heffernan. In *McLaughlin* v. *United Railroads,* 169 Cal. 494 [147 P. 149, Ann.Cas.1916D 337, L.R.A. 1915E 1205], it was held that in a personal injury action evidence of the pecuniary benefit to the deceased's heirs from the death of a victim is not admissible. However, the situation here was different from that in the McLaughlin case. Here, plaintiffs did not object to the original questions concerning the value of Mrs. Heffernan's estate, and encouraged the statements of counsel which they now claim to be misconduct, and further, made no assignment of misconduct in the trial court. There were two causes of action in this case, the first by the administrators with the will annexed, the second by the son and daughter as heirs of the deceased. In this cause of action the heirs alleged that they paid a certain sum for funeral expenses. At the trial, they introduced bills for medical and hospital services (these were only marked for identification), funeral services and for the cemetery plot (the funeral and cemetery bills were admitted in evidence). Plaintiff Daniel O'Connor testified that the heirs had paid these bills. Defendant asked the witness if it wasn't a fact that Mrs. Heffernan left $10,000 and that the bills were paid out of her estate. Without objection, defendant read into evidence the doctors, hospital and cemetery bills which had been filed in the estate. Plaintiffs' counsel then said: "Read the inventory of the estate." Defendant did not do so. Whereupon plaintiffs' counsel said: "I want him to prove the statement he made that the mother had $10,000." The witness then admitted the bills were paid out of the estate. From then on plaintiffs' counsel was insisting that defendant's

counsel was wrong in having stated that the value of the estate was $10,000 and wanted him to admit that it was only $6,977. The alleged misconduct was defendant's counsel's insistence that the value of the estate was in excess of its inventory value. The value of the estate was immaterial. Defendant had the right to show that the bills were paid by the estate and not by the heirs. The matter should have ended there. However, in view of the absence of objections and assignments of misconduct (see *Cope* v. *Davison,* 30 Cal.2d 193 [180 P.2d 873, 171 A.L.R. 667] and *Collas* v. *Pasadena City Lines,* 89 Cal.App.2d 93 [200 P.2d 77]) and in view of the action of plaintiffs' counsel in pressing the matter of the value of the estate (even after the court had interjected "I am wondering if this is relevant to this case") the misconduct, if any, was not prejudicial.

The appeal from the order denying the motion for a new trial is dismissed, and the judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 25, 1949. Carter, J., voted for a hearing.