[Civ. No. 17419.   First Dist., Div. One.   Jan. 21, 1958.]

CLARENCE J. SMITH, Appellant, v. H. E. ANNING COM-
PANY (a Partnership) et al., Respondents.

John F. Moran, F. Herschel Campbell and George Olshausen for Appellant.

Appel, Liebermann & Leonard and Leonard A. Worthington for Respondents.

PETERS, P. J.—Clarence J. Smith was an employee of the W. B. Baker and Company, a subcontractor installing the air conditioning units in a Stockton high school. This high school consisted of several units. Smith fell through the partially completed roof of the boys' large gym and suffered severe injuries. He brought this action against H. E. Anning Company, the roofing subcontractor for the gymnasiums and auditorium, and Barrett and Hilp, the general contractor. The jury brought in verdicts for both defendants. Smith appeals.

The plans and specifications called for the use of a one-inch board known as Sonotherm as a base for the roofs of the various gymnasiums. These specifications were approved by the State Division of Architecture. Sonotherm is a fibreboard made of shredded wood and cement compressed into a board one-inch thick. On top of the Sonotherm is a steel frame on which wire mesh is attached, and then gypsum and tar and gravel are poured over it to make the roof. The Sonotherm supports the gypsum mix during the drying period. There was considerable conflict as to the precise color of Sonotherm. One witness testified that it was "light green—gray-green"; another, "gray-brown; it was quite a brown coloring." The company manufacturing the product described it as having a "neutral gray finish." Another witness described it as being between black and white, that is, gray with a tinge of blue, while another witness said that it was of a gray concrete color. It is reasonable to infer that in color it somewhat resembled concrete.

Sonotherm is a new process, and had never before been installed by respondent H. E. Anning Company. Several days before the accident to appellant another person had put his foot through the Sonotherm, but the wire mesh caught him so

that he did not fall through. Appellant was not so lucky because the wire mesh had not yet been installed in the portion of the roof where he fell.

All of the employees of the H. E. Anning Company were told that Sonotherm would not support the weight of a person and was hazardous, and respondents' employees told anyone coming near to where they were working of the danger. There were, however, no warning signs on the roof, nor was the roof roped off in any way. Appellant testified that no one warned him about the roof, and there was no evidence to the contrary. The plans and specifications showing the roof construction were available to all subcontractors.

Appellant testified that prior to the accident he had never seen any Sonotherm, and that he had been on the roofs of several of the other buildings involved in the total job and that they were all of concrete.

There is a conflict in the evidence as to whether appellant had any legitimate business on the roof the day he was hurt. The foreman for H. E. Anning Company testified that appellant had no work to perform on the roof. The superintendent for Barrett and Hilp stated that appellant had work to do on many of the roofs, but that he had no work to perform on the boys' large gym, although he had some work close to it. Appellant testified that he was on the roof to check the ventilator on the roof of the boys' small gym,* to see if a rigging firm which he had hired had placed blowers on the boys' shower room which was near the boys' small gym and the roof of which was some 20 feet lower than the roof on the boys' large gym.† Another reason given by appellant for being on the roof was that he wanted to check the ridge of the boys' large gym because he intended to install, in the future, three blowers on that roof. These three fans were not part of the original contract but were later installed by appellant's employer pursuant to a separate contract. There is ample corroborating evidence that appellant in fact had discussed these blowers with several people prior to the accident, and they were in fact installed some four to six months after the contract job was completed. Appellant admitted that his employer was not doing any actual work on the roof of the boys' large gym at the time of the accident.

---

*Other evidence is to the effect that at the time of the accident there was no roof at all on the small gym.

†Appellant apparently erroneously believed that he was on the roof of the shower room when he fell.

On the afternoon of March 17, 1950, appellant was on the roof over the choral room, and then proceeded northerly to check several air conditioning units over various rooms. He finally arrived at a 4-foot 6-inch fire wall adjacent to the roof over the boys' large gym. He climbed up on this wall, looked over the roof of the gym, glanced down where he was to step, and slid down on the Sonotherm. The Sonotherm did not sustain his weight and he went right through to the floor of the gym about 40 feet below. He suffered serious and permanent injuries. Appellant testified that there were no boards on the Sonotherm, nor did he observe anyone working on the roof of the gym. He did not see any rails projecting up through the Sonotherm. Appellant admitted that he did not check with the roofers to determine whether that particular roof could be walked on. He said that the roof looked like concrete, and that he assumed the work on it had been completed.

The evidence is quite clear that at the time of the accident the Sonotherm had not yet been installed all over the roof of the boys' gym. Between one-third to two-thirds of that roof had not yet been completed, and was open. There was also evidence that there was a hoist on the center of the roof over the gym, but appellant did not see it. There was also evidence from H. E. Anning Company employees that planks for the workers to walk on had been installed near some of the walls of the gym, but that there were no such planks at the specific spot where appellant fell. The evidence is that the steel rails which the Sonotherm fitted into projected two inches above the Sonotherm and were clearly visible. There was no wire mesh, gypsum or tar paper on the roof when appellant fell.

On this evidence the jury brought in its verdict in favor of both defendants, and plaintiff appeals. He does not question the sufficiency of the evidence to sustain the adverse verdicts, but contends that prejudicial error was committed by the giving of certain instructions, and in sustaining objections to some of plaintiff's evidence.

One of the most serious questions presented revolves around the following instruction proffered by Barrett and Hilp and given, as modified, by the trial court. It reads: "Before the plaintiff may recover in this action against Barrett & Hilp, he must show by a preponderance of the evidence that Barrett & Hilp owed a duty toward him which it failed to discharge, and also the plaintiff himself was free from contributory negligence."

One of the major issues presented to the jury was whether appellant was guilty of contributory negligence. Appellant contends that, by the above instruction, the jury was told that the burden was on appellant to show by a preponderance of the evidence not only that Barrett and Hilp owed a duty toward him which it failed to discharge, but also that he must prove by a preponderance of the evidence that he was free from contributory negligence. Such an instruction, had it been given, would have been clearly erroneous because the burden to show contributory negligence is, of course, on the defendant. Appellant admits that a complete, detailed and proper instruction was given on the burden to prove contributory negligence, but contends that the instruction quoted above conflicts with the proper one on contributory negligence, and that such conflict requires a reversal.

The above quoted instruction appears on page 493 of the Reporter's Transcript. At pages 491 and 492 appears this instruction:

" 'Contributory negligence' is such an act or omission on the part of the injured party—the plaintiff—however slight, amounting to a want of ordinary care, as, concurring and cooperating with a negligent act of a defendant, was the proximate cause of the injury complained of. Unless it is shown by, or may be inferred from, the evidence offered by the plaintiff, such negligence is a matter of defense, to be proved affirmatively by the defendant.

"It is not incumbent upon the plaintiff to prove he was free from contributory negligence. Contributory negligence cannot be presumed from the mere fact of the injury, or the mere fact that it has been alleged and charged by the defendant or defendants."

The court also clearly admonished the jury not "to select a single instruction, or a portion of any instruction alone, but to consider all of the instructions, in determining any issue in this case."

If the challenged instruction did erroneously tell the jury that the burden was on plaintiff to refute contributory negligence then the jury was erroneously instructed on an essential principle of law. Such an error, had it been committed, could not be held to be nonprejudicial by reason of the correct declaration of the same principle in another instruction because it would be impossible to determine which of the two contradictory instructions the jury followed. This was the precise holding of *Bellows* v. *City & County of San Francisco*,

106 Cal.App.2d 57 [234 P.2d 729], relied upon by appellant. In that case a defendant's judgment was reversed. Contributory negligence was an issue. The trial court, after correctly instructing that before a verdict could be rendered against the defendant it must appear by a preponderance of the evidence that the defendant was negligent and that such negligence proximately contributed to the injury, then continued in the same instruction (p. 58) : *"and also before you can find a verdict in favor of plaintiff and against defendant, you must further find, from a preponderance of all the evidence, that plaintiff herself was not guilty of negligence proximately contributing to the happening of said accident."* This was a direct unequivocal misstatement of the law on the issue of contributory negligence. Correct instructions were also given on that issue. The court properly held the error to be prejudicial and reversed the case.

*Howard* v. *Worthington,* 50 Cal.App. 556 [195 P. 709], is a somewhat similar case. In that case the appellate court found four erroneous instructions. The trial court had correctly instructed that the burden was on defendant to prove contributory negligence by a preponderance of the evidence, but it also instructed: "In order, therefore, to find a verdict for the plaintiff, you must not only find from a preponderance of all the evidence that the defendant was negligent, but also that such negligence was the proximate cause of the injury to the plaintiff; *and you must further find that the evidence shows, by a preponderance thereof, that the plaintiff was not guilty of negligence, however slight, contributing proximately thereto; otherwise, your verdict should be for the defendant."* (P. 559.)

The appellate court held that where the trial court first correctly states a basic rule, in general terms, and then directly states the contrary rule in language pointed specifically to the case under consideration, the error cannot be cured by considering the instructions as a whole.

We agree with the rules of these cases, but such rules are not here applicable. Unlike the two cases to which reference has been made, the challenged instruction in the instant case did not state that the plaintiff in order to recover had the burden of proving that he was free from contributory negligence. The challenged instruction first told the jury, correctly, that in order to recover the plaintiff must show by a preponderance of the evidence that the general contractor owed him a duty which was breached. Then the court continued "and

also the plaintiff himself was free from contributory negligence.'' This portion of the instruction, unlike the instructions in the two cited cases, did not say anything about burden of proof. But in specific terms the court had already correctly instructed on this issue. Unfortunately, in combining the statement of two rules in the challenged instruction—that plaintiff must show a breach of duty, and that plaintiff must be free of contributory negligence—the court, after stating the first principle correctly, awkwardly and somewhat confusedly expressed the second. ■ Where the instructions harmonize as a whole, and fairly and accurately state the law, a reversal will not be granted because of verbal inaccuracies or vagueness in one instruction, or because a separate instruction does not contain all of the elements which are clear when the instructions are read as a whole. (*Westover* v. *City of Los Angeles*, 20 Cal.2d 635 [128 P.2d 350].) That is this case. ■ No reasonably intelligent person could believe, after listening to the correct instruction, that the challenged instruction was contradictory to it. The correct instruction, which was first read to the jury, is clear, concise, specific and correct. The challenged instruction is general, vague, and obviously not complete. Under the circumstances, the two are clearly reconcilable. That being so, there was no prejudicial error.

■ Appellant next complains of respondent H. E. Anning Company's instruction Number 45, which reads as follows: ''If plaintiff went upon and used the unfinished work of the defendant H. E. Anning Company, the law imposes upon him the duty to exercise the care and caution of an ordinarily prudent man and to observe the obvious hazards of the position in which he had placed himself. Under such circumstances, he would have no right to assume that the unfinished roof work in process of construction had been completed, and could be safely used for his support.''

Appellant concedes that the roof was unfinished at the time of the accident, and makes no serious complaint about the first part of the instruction relating to his duty to exercise the reasonable care of an ordinarily prudent man, but he contends that the last portion is erroneous for the reason that it practically took the issue of contributory negligence away from the jury. Appellant contends that the challenged portion of the instruction was based upon excerpts taken from *Boucher* v. *American Bridge Co.*, 95 Cal.App.2d 659 [213 P.2d 537]. That case involved an appeal by a defendant. The judgment

was reversed. In that case this court quoted a number of instructions, including one similar to the one here involved. Then the court held that the charge was erroneous because it assumed that the plaintiff had a right to be on the part of the structure from which he fell and that, as a matter· of law, the defendant owed him the duty of due care. The facts were that defendant was erecting the steel framework for a mill. Plaintiff was an employee of the electrical contractor. Plaintiff walked along a horizontal steel truss erected by defendant to reach a ladder that was closer than the one he had used to ascend. This truss was unsecured, and plaintiff fell. He had not been told to avoid the truss, and defendant did not warn the electricians that the truss was unsecured. The appellate court held that, under the evidence, the jury could have found the plaintiff was an invitee, licensee or trespasser. Therefore, reversible error was committed in instructing that defendant owed a duty to plaintiff. Thus, the rules of the Boucher case are not here involved.

The challenged instruction was not erroneous. It does not tell the jury, directly or indirectly, that plaintiff was guilty of contributory negligence as a matter of law. It simply states that one who knowingly uses an unfinished roof cannot assume that it is safe. In such event he cannot abandon the care and caution of the ordinarily prudent man.

The appellant also objects to the following instruction: ''There is nothing inherently dangerous in doing roofing work such as was here involved, and therefore it was not incumbent upon the defendant Anning to advise plaintiff concerning any apparent condition or conditions which, being plainly observable, would advise a reasonable and prudent man to make inquiry concerning any probable dangers which might be involved in their use. The question of whether or not the conditions existing herein were or were not plainly observable to a reasonably prudent person, is one of the facts for the jury to determine from the evidence in this case, in the light of the instructions which I give you.''

Appellant contends that whether or not there was anything inherently dangerous in the roofing was the very heart of his case, and that this instruction was contrary to the evidence and, in effect, removed from the jury's consideration the most important fact in the case.

The instruction was a proper one. In *Pauly* v. *King,* 44 Cal. 2d 649 [284 P.2d 487], the plaintiff was an employee of a roofing subcontractor. He fell when a sheet metal flashing

extending beyond the edge of the roof collapsed. The court gave, and the appellate court approved, an instruction substantially similar to the one here involved. In so doing, the court stated (p. 660): "Here, the apparent purpose of the instruction was to advise the jury that the general contractor was under no duty to warn Pauly of any dangers arising from his doing roofing work on a flat deck surface, which would be apparent to an experienced roofer."

In discussing a somewhat similar situation the court, in *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263, 275 [246 P.2d 716], stated: "There is nothing inherently dangerous in doing work on a high scaffold [citing a case] and therefore it was not incumbent upon appellant [general contractor] to advise respondent [employee of a subcontractor] against using his own scaffold."

In the case at bar the court gave a whole series of instructions on the duty of the general contractor, of which the challenged instruction was but one. The court instructed, among other things, that the general contractor was under a duty to warn of any undisclosed danger, including conditions not only known to be dangerous but also those that in the exercise of ordinary care he should have known were dangerous. The court also correctly instructed as to the duty one independent contractor owes to another. The challenged instruction, as in the Pauly case, was intended to advise the jury that there was no duty to warn the plaintiff of obvious conditions. That is the law, and the evidence justified the instruction. The evidence shows that the roof here involved was at least one-third unfinished. That condition was apparent even if Sonotherm could be mistaken for concrete. Thus, the instruction was proper.

The appellant's last objection to the instructions is that the following instruction was erroneous: "If you find from the evidence that the general contractor, Barrett & Hilp, took reasonable measures to protect the employees of subcontractors from injuries likely to arise from places of danger about the building, by notifying persons concerned of dangerous conditions which might be anticipated in areas where they were reasonably expected to go in the course of their employment, at the places when said dangers, if any, existed, and by furnishing boards or planks which would afford reasonable protection to persons going over said areas, you may then find that the general contractor discharged the duties required of him by law; and if the accident occurred through accidental

means, or the negligence of the plaintiff himself, or the negligence of some other person over whom the general contractor had no supervision or control, then your verdict in such case should be for the general contractor, Barrett & Hilp.'' (494:24.)

Appellant argues that the phrase ''through accidental means'' misled the jury because it told the jury that a finding in favor of Barrett and Hilp was required unless its acts were intentional. A case so interpreting an insurance policy— *Davilla* v. *Liberty Life Ins. Co.*, 114 Cal.App. 308 [299 P. 831]—is cited in support of this construction. Obviously, the meaning of the phrase in an insurance policy is not necessarily the meaning of the same phrase in an instruction. The defenses of the defendants and the context of the phrase must be considered.

When read in context the phrase was intended to mean ''caused through no one's fault,'' and was apt to the defense of unavoidable accident pleaded in the answer of Barrett and Hilp. The jury was clearly instructed that ''Intent is not an essential element of negligence.''

Dean Prosser defines the phrase ''unavoidable accident'' in the following language (Prosser on Torts, 2d ed., p. 117): ''An unavoidable accident is an occurrence which was not intended, and which, under all the circumstances, could not have been foreseen or prevented by the exercise of reasonable precautions.''

It should also be pointed out that immediately following the challenged instruction, appears the following one: ''I instruct you that an injury which could not have been reasonably anticipated by a person of ordinary prudence and intelligence, as the probable result of the condition of the premises, it is not actionable. Therefore, if you find from the evidence that the defendant Barrett & Hilp, in the exercise of ordinary prudence and intelligence, could not reasonably have anticipated the plaintiff would be injured as a result of the condition of the premises in question, your verdict should be in favor of the defendant Barrett & Hilp.''

Thus the jury was instructed as to the requirement of foreseeability as an element of negligence. It is the absence of this element that makes an accident ''unavoidable.'' Moreover, the jury was fully and correctly instructed on the duty of the defendant if the plaintiff should be found to be an invitee or a licensee.

When all these factors are considered, and when the instruc-

tions are read as a whole, it cannot be seriously doubted that from the phrase here involved the jury was not misled into believing that intent was a necessary requirement for negligence.

Appellant also objects to the instruction because it omits all reference to proximate cause. This point is without merit and was disposed of adversely to appellant's contention in *O'Connor* v. *City & County of San Francisco,* 92 Cal.App.2d 626 [207 P.2d 638].

The last contentions of appellant relate to the action of the trial court in sustaining objections to two questions propounded by appellant to Henry Sorensen, foreman for H. E. Anning Company.

The first question was, "You knew, did you not, there was a reasonable probability that Sonotherm might be mistaken for concrete, by workmen from other parts of the building who were unfamiliar with it?" An objection that the question was "incompetent, irrelevant and immaterial" was sustained, the court also stating that "it calls for the opinion and conclusion of the witness." There was plenty of evidence as to the nature and appearance of Sonotherm, and of its resemblance to concrete. The question as framed, asking, as it does, whether there was a "reasonable probability" that Sonotherm "might" be mistaken for concrete, clearly called for the conclusion of the witness. The objection was therefore properly sustained.

Appellant also objects to the sustaining of an objection to the following question, also directed to Sorensen: "When you left the roof and anyone would come onto the roof, did you leave anyone there to warn people about the Sonotherm?" Counsel objected on the grounds that there was not any showing that anyone was on the roof and that the question assumed facts not in evidence. The court sustained the objection and stated that the witness had answered that line of questioning as fully as he could. The court further commented: "as far as he was concerned, he warned the men in his crew and when he saw anybody walking around there, he warned them not to come onto the roof. I think that's sufficient, in and of itself. What difference would it make? If I were working up there with him and he said, 'Anybody comes around here, tell them to keep off' and I had to go down to the floor below to get some tools or a drink of water and somebody came up—it wouldn't make much difference, would it?

"Mr. Moran [counsel for plaintiff:] "No. I think that's all."

Counsel for appellant filed an affidavit contending that there should have been a question mark instead of a period after the word "No" to indicate his disagreement with the trial court's ruling. The record was not corrected.

Even if we do not assume that appellant's counsel acquiesced in the ruling, the ruling was not prejudicial. The witness had already testified that he warned his workers and anyone who came near where he was working, or who was curious, of the inability to walk on Sonotherm, but that he had not posted warning signs. Another H. E. Anning Company employee testified that both he and Sorensen warned any person who looked as though he was going to walk on the roof. There was substantial evidence that no employee of H. E. Anning Company saw appellant before he fell. In view of all of this evidence demonstrating that appellant received no warning of the danger, and of the evidence substantially supporting the implied finding of contributory negligence, no prejudice could possibly have occurred by sustaining the objection.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 20, 1958, and appellant's petition for a hearing by the Supreme Court was denied March 19, 1958.